**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
<u>**Case No.:  1:20-cv-21558-KMW**</u>

GOVERNMENT EMPLOYEES INSURANCE
CO., et. al.
Plaintiffs

v.

PALMETTO HEALTH MEDICAL CENTER,
CORP., et.al.
Defendants
_____

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO**
<u>**FED.R.CIV.PRO. 12(b)(6)**</u>

Defendants, Palmetto Health Medical Center, Dr. Jose Gomez-Cortes, Adrian Hernandez,

Martha Torres, and Tamara Hernandez (hereinafter collectively "Palmetto Health"), by and

through their undersigned counsel, do hereby Move this Honorable Court pursuant to Federal Rule

of Civil Procedure 12(b)(6) to Dismiss Plaintiff's Complaint and in support thereof aver as follows:

**I.      <u>GEICO FAILS TO STATE A PLAUSIBLE FRAUD CLAIM</u>**

Despite 3,770 pages of Complaint and Exhibits, GEICO fails to set forth a plausible claim

of fraud.  Once one cuts through its indiscriminate surplusage, the Complaint is revealed to rest

entirely on two threadbare, *purely legal* conclusions, one of which is woven out of whole cloth by

GEICO, and another which simply makes no sense on its face.

The legal conclusion manufactured by GEICO, the main pillar of its pillory, regards the

level of supervision which is legally required of medical doctors over "incident to" services

provided by nonphysician personnel before the doctor may bill for said services.  After weaving

through various state, federal, and secondary sources, GEICO announces that the level legally

required is "direct" and doctors must therefore be constantly and physically present within the

office while any such services are performed in order to bill for them.

1

The second legal conclusion underpinning GEICO's Complaint is just plain logically impossible.  It posits that the records of treatment created by the Defendants so obviously reflects unnecessary care that anyone "legitimately" reviewing the records would have concluded immediately upon doing so that they were entirely fraudulent, *except for the GEICO PIP adjusters who paid for the treatment.*

Each of the causes of action propped up by these legal conclusions is entirely premised on an allegation of fraud.[1]  As detailed below, however, GEICO's naked legal conclusions fail in all respects to serve as plausible bases for alleging intentional fraud, and each one of GEICO's causes of action therefore fail to state a claim as a matter of law.

Alternatively, GEICO must be required to at least provide a more definite statement given the unfairly ambiguous manner in which it is plead.

A.      **LEGAL CONCLUSION #1: "DIRECT" SUPERVISION**

GEICO alleges that Palmetto Health violated Florida's Health Care Clinic Act (Fla. Stat. § 400.9935), because its Medical Director, Jose Gomez-Cortes, M.D. "never legitimately conducted systematic reviews" of Palmetto's billings; permitted Palmetto to "misrepresent the identities of the treating providers, bill for illusory services, misrepresent the nature, extent, and results of patient examinations, and bill for 'physical therapy' services that were performed by unsupervised masseuses" and "permitted unsupervised masseuses to purport to perform 'physical therapy.'' See ECF 1, ¶68.

However, the "facts" GEICO uses to support these allegations are circular and deliberately obfuscating (and of course, insultingly ageist).  For instance, GEICO alleges that in addition to Palmetto, Dr. Gomez-Cortes was also the Medical Director at 2 other clinics named as defendants,

---

[1] The Counts applicable to the Palmetto Health are 1 and 44-49 and include a demand for Declaratory Judgment, federal and state RICO claims, FDUTPA, Common Law Fraud, and Unjust Enrichment.  Each incorporates every prior allegation of the Complaint and is entirely premised on the accusation that Palmetto Health knowingly submitted and received payment for knowingly false bills.

and describes all three clinics as located "throughout the Miami area." ECF 1, ¶88.[2] This is, however, an intentional bit of subterfuge designed to create imaginary support for what GEICO knows to be an otherwise invented legal conclusion.

Palmetto Health and Fernandez Medical Services, two of the three clinics at which Dr. Gomez-Cortez served as Medical Director, are in actuality within 2 blocks of each other in Hialeah and easily accessible from one location to the next within 2-3 minutes. GEICO's effort to paint them as geographically far-flung "throughout the Miami area" is quite obviously deliberate.[3] GEICO seeks to create a false impression of geographic distance because the plausibility of its legal conclusion is partially dependent upon such a misconception.

Cutting through its bluster, the heart of the GEICO's fraud allegations against Palmetto Health is found in paragraphs 101-104 of the Complaint. Therein, GEICO weaves a tale of statutory divination, starting with Florida's PIP statute, moving next to the Medicare Claims Processing Manual, and ending with the Code of Federal Regulations. Through this self-serving journey of creative lawyering, GEICO patches together its legal conclusion of "direct supervision" being required:

**101. As set forth above, the No-Fault Law's billing requirements provide – among other things – that all PIP billing must comply with the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms. See Fla. Stat. § 627.736.**

**102. Pursuant to the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, the name of the healthcare provider who actually performed or directly supervised the underlying physical therapy treatment must be listed on the HCFA-1500 form. See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set.**

**103. To "directly supervise" a physical therapy treatment, a physician "must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the**

---

[2] GEICO suggests vaguely in paragraph 65(iv) that Dr. Gomez-Cortes was also for an undefined time period the Medical Director at Wellness Healthcare, but also identifies in the same paragraph that Defendant, Dr. Fernandez, served in that capacity as well. **[address of Wellness? Does it make a difference?]**
[3] The desire for an economy of words was clearly not the issue.

**room when the procedure is performed." See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set, citing 42 C.F.R. 410.32.**

**104.  Pursuant to the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, to the extent that a physician is not actually "directly supervising" a physical therapy treatment, then the actual name of the person who is actually performing the physical therapy treatment must be listed on the HCFA-1500 form. See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set.**

As the Court can see, the rabbit in GEICO's hat is placed there in paragraph 102, wherein it simply pronounces that the various statutes, regulations and secondary sources to which it vaguely cites, *when taken together*, demand "direct" supervision and further, that they collectively define "direct" supervision as being "present in the office suite."  Upon this grand legal pronouncement, GEICO obsessively cuts and pastes allegations designed solely to show that Dr. Gomez-Cortes could not have been "in the office suite" as every service at issue was being performed at the clinics for which he served as Medical Director.

Though GEICO tries to obscure reality with a sheer volume of words, its *entire* allegation of fraud boils down to a simple allegation that Palmetto Health committed fraud because Dr. Gomez-Cortes appears not to have "directly" supervised the treatment billed.  Every "fact" pleaded by GEICO is designed solely to show that it is "improbable" that Dr. Gomez-Cortes' level of supervision met the definition of "direct supervision" which GEICO claims is necessary.

This means, however, that if the level of supervision required of a medical doctor over the "limited range of healthcare services" at issue in this case (ECF 1, ¶71) is not in fact required to be "direct", then GEICO has failed to plausibly allege even one single false representation (much less intentional fraud).

It is critical to note that by its own pleading, GEICO confirms that Palmetto Health's bills were entirely accurate if in fact Dr. Gomez-Cortes did provide the *appropriate* level of supervision. GEICO admits that every note reflecting the services provided by nonphysician personnel was signed and acknowledged to have been entirely provided by the nonphysician personnel who

performed them, so GEICO could never have paid a bill for these services under the false impression that Dr. Gomez-Cortes had performed them personally. See ECF 1, ¶108(i-xxx). Therefore, when it paid Palmetto Health's bills, GEICO can only reasonably have done so on the premise that Dr. Gomez-Cortes was *appropriately* supervising the nonphysician providing the services.

By the terms of GEICO's own Complaint, therefore, if Dr. Gomez-Cortes provided an appropriate level of supervision, then all of Palmetto Health's bills were perfectly accurate and GEICO has failed to allege even one false statement, rendering its fraud allegations obviously implausible.

But even if GEICO's self-serving legal conclusion that "direct" supervision was required is ultimately determined to be correct, its allegation of *knowing fraud* is still not plausible. GEICO has, at best, only alleged facts to support an inference that Dr. Gomez-Cortes did not provide "direct" supervision. GEICO has *not* plead *any* facts as to the level of supervision Dr. Gomez-Cortes *actually provided*. Therefore, if it is a reasonable interpretation of the pertinent law that something *other* than "direct" supervision permits a licensed physician to bill for certain services provided under his name by nonphysician personnel, then GEICO has failed to plausibly state a claim for intentional fraud.

As detailed below, it is in fact a reasonable interpretation of the complicated regulatory scheme which governs medical billing that a physician may bill under his name for "incident to" services provided under his *general* supervision by nonphysician personnel. Having alleged no facts to support an accusation that Dr. Gomez-Cortes did not provide *general* supervision over the services billed, GEICO has failed to set forth a plausible basis for fraud.

**B.      LEGAL CONCLUSION #2: FRAUD THAT IS OBVIOUS TO EVERYONE EXCEPT GEICO**

The other basis upon which GEICO alleges fraud is that representations made by Palmetto Health in its treatment notes were so obviously deficient in every respect that any objectively reasonable person reviewing them would have seen immediately that they were entirely fraudulent.  (See, ECF 1, ¶112-116).  Yet in paragraph 275, in support of its claim of justifiable reliance, GEICO alleges that it was defrauded when it paid the bills because of the "facially-valid documents submitted to GEICO" by Palmetto Health.  Both of these allegations cannot be true.

A deeper dive into GEICO's accusations only adds to the confusion.  In paragraph 108(i-xxx), GEICO lists "examples" of how Palmetto Health's records "concealed" the identity of the person actually performing the 'limited range of health services" billed under Dr. Gomez-Cortes's name.  Yet, in every single one of these examples, GEICO admits that the therapy notes were signed by the person performing the service "in keeping with the fact that the pertinent services were performed" *by the person who signed them*.

What GEICO is alleging as fraudulent misrepresentation is really nothing of the kind. Rather, GEICO is claiming to have paid millions of dollars in bills without once ever looking at the documents submitted to support the billing.  GEICO is thus demanding that the Court accept as a reasonable standard of PIP claims adjusting (and consumer conduct in general) that insurers may blindly pay bills for years without reviewing any of the documentation submitted along with them and still be free, apparently upon any whim, to later review any number of past bills and claim to have been "defrauded" by the representations contained therein.  In pressing such a standard, GEICO is not only asking the Court to excuse insurers from any reasonable diligence in the conduct of their business, it requires the Court to ignore the regulatory scheme GEICO relies upon to allege fraud in the first place.

Contrary to the risible premise that fraud can be obvious to everyone except GEICO, the PIP statute and the regulations relied upon by GEICO clearly contemplate that insurers are actually

reviewing all of the documentation submitted in support of bills for services rendered *before* issuing payment. These statutes and regulations do not exist for insurers to cherry-pick portions of them they wish to exploit for their advantage. By attempting to do just that, however, GEICO exposes the implausibility of its second legal conclusion, and its claims of fraud based on it must therefore be dismissed as a matter of law.

## C. GEICO HAS STATED NO BASIS FOR ANY CAUSE OF ACTION AGAINST MARTHA TORRES

The only specific allegation made against Martha Torres is that she provided a "limited range of healthcare services" while employed at Palmetto Health, created *accurate* notes of what she did, and signed her name to every note announcing that she had done it. There is not a single averment of fact offered to support that Ms. Torres had any role in, knowledge of, or responsibility for creating and submitting the HCFA forms which constitute the sum total of allegedly false statements made to GEICO. This failure requires that the causes of action against Ms. Torres be dismissed in their entirety.

## D. GEICO'S CLAIMS ARE AMBIGUOUS

GEICO alleges that 17,498 individual services provided at Palmetto Health were fraudulently billed but offers a potentially different theory as to how for each one. Hundreds of times throughout its Complaint, GEICO applies caveats such as "in many cases" and "to the extent the services were provided at all" when describing the fraud alleged to have been committed. Such "and/or" types of caveats with respect to the critical allegation renders the Complaint unfairly ambiguous. Should the Court determine that GEICO may proceed with some or all of its action, it is respectfully requested that it be required to identify the particular fraud it is alleging with respect to each date of service.

<u>**MEMORANDUM OF LAW**</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, would state a claim to relief that is <u>plausible on its face</u>. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  **The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.**  <u>Asbury v. Slider</u>, 2020 WL 871097, at \*2 (M.D. Fla. Feb. 21, 2020), *citing* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2))(emphases added).

The "plausibility standard requires that the allegations be more than merely conceivable." <u>Pavic v. Laser Spine Inst., LLC</u>, No. 8:13-CV-02578-EAK, 2014 WL 2707953, at \*1 (M.D. Fla. June 13, 2014), *citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "Application of this standard follows two analytical principles. First, the court will not presume the truth of a complaint's **legal conclusions**. Second, a complaint's well-pleaded factual allegations must allow the court to infer the plausibility, rather than the **mere possibility**, that the plaintiff is entitled to the relief sought." <u>Pavic v. Laser Spine Inst., LLC</u>, No. 8:13-CV-02578-EAK, 2014 WL 2707953, at \*1 (M.D. Fla. June 13, 2014) (emphasis added).

## I.   <u>GEICO FAILS TO THREAD THE NEEDLE</u>

The outlandish size of GEICO's Complaint is itself a head fake designed to obscure the thin thread from which its fraud claim is woven into whole cloth.

Cutting through its voluminous folds, GEICO's Complaint concedes in paragraphs 100-104 that Florida law itself does not define the level of supervision necessary for a prescribing medical doctor to bill under his name for services provided by nonphysician personnel.  There is certainly no provision within the PIP statute itself which says as much. This is why GEICO must weave its way through state and federal statutes, obscure secondary sources, and the Code of Federal Regulations, to arrive at the patchwork of a legal conclusion only it can see.

A.    **The First Stitch - Florida's Health Care Clinic Act**

GEICO starts its construction at Florida's Health Care Clinic Act, Fla. Stat. § 400.9935,

the relevant portion of which states:

**(1) Each clinic shall appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for the following activities on behalf of the clinic. The medical director or the clinic director shall:**

**(g) Conduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action. If the clinic performs only the technical component of magnetic resonance imaging, static radiographs, computed tomography, or positron emission tomography, and provides the professional interpretation of such services, in a fixed facility that is accredited by a national accrediting organization that is approved by the Centers for Medicare and Medicaid Services for magnetic resonance imaging and advanced diagnostic imaging services and if, in the preceding quarter, the percentage of scans performed by that clinic which was billed to all personal injury protection insurance carriers was less than 15 percent, the chief financial officer of the clinic may, in a written acknowledgment provided to the agency, assume the responsibility for the conduct of the systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful.**

The Health Care Clinic Act states that a Medical Director accepts "legal responsibility" for

the activities of the clinic by conducting "systematic reviews" of the clinic's billings.  Importantly,

however, **"[t]he Clinic Act does not state exactly how thorough a medical director's**

**systematic review must be**…" Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1332 (11th Cir. 2016).

Whatever type of systematic review may actually be required (and not even GEICO

pretends to know), the Florida Administrative Code clearly contemplates that Medical Directors

are not required to be, nor are they expected to be, physically present within the clinic as the

treatment for which they are accepting legal responsibility is provided:

**A medical or clinic director may not serve in that capacity for more than a maximum of five health care clinics with a cumulative total of more than 200 employees and persons under contract with the health care clinic at any given time. A medical or clinic director may not supervise a health care clinic more than 200 miles from any other health care clinic supervised by the same medical or clinic director.**

Fla. Admin. Code Ann. r. 59A-33.013.

It is obvious from the above provision that by expressly permitting doctors to serve simultaneously as the Medical Director of up to 5 clinics, which can be as many as 200 miles apart, the legislature did *not* intend to require their physical presence in each office as the treatment they are overseeing is being provided.  GEICO's allegation that a medical director is required to be on the premises for each service supervised therefore finds no support in the Health Care Clinic Act itself.

**B.     Second Stitch – the PIP Statute**

GEICO next moves to the PIP statute, which provides in relevant part that **an insurer or insured is not required to pay a claim or charges:**

**For medical services or treatment billed by a physician and not provided in a hospital unless such services are rendered by the physician or are** underline incident to **his or her professional services and are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services that were rendered and billed.**

Fla. Stat. Ann. § 627.736(5)(a)(5)(b.1)(f)(emphasis added).

The PIP statute does not define what the Florida legislature intended by the phrase "incident to" but does, as GEICO points out, refer generally in various places throughout the statute to Medicare guidelines.  As the Court is no doubt aware, however, the legal paper devoted over the decades to interpreting the seemingly simple phrase of "incident to" under Medicare guidelines could fill an entire wing of every courthouse in the country.  Consider just the "definition" cited by United States v. Marder, 208 F. Supp. 3d 1296, 1306–07, fn. 11 (S.D. Fla. 2016): "Incident to services" are services that are furnished by other employees of the physician—such as a PA or NP—incident to the professional services personally rendered by the physician."

In other words, "incident to" services are those that are…"incident to."

This lack of clarity within the PIP statute itself necessarily means that GEICO cannot plausibly rely upon it as the basis for alleging that the services provided at Palmetto Health were

*fraudulently* billed on the basis they were not "incident to" the initial and follow-up examinations and treatment plans GEICO admits Dr. Gomez-Cortes provided.

Having failed to find support in Florida law, GEICO therefore turns next to the federal regulations and secondary guidance surrounding the Medicare program.

### C.   The Hem – Medicare Manuals and the CFR

From the PIP statute, GEICO casually turns to a Medicare Claims Processing Manual as if it is Black's Law Dictionary, and from there hems everything up with 42 C.F.R. §410.32. Despite this intricate tailoring, however, all that GEICO comes up with in the end is a naked legal conclusion that has no other authority than GEICO's Complaint.

Far from providing the clarity GEICO claims it does, the Medicare Processing Manual states with respect to properly filling in box 31 of the HCFA-1500 form:[4]

**In the case of a service that is provided <u>incident to</u> the service of a physician or non-physician practitioner, when the ordering physician or non-physician practitioner is directly supervising the service as in 42 CFR 410.32, the signature of the ordering physician or non-physician practitioner shall be entered in item 31. When the ordering physician or non-physician practitioner is not supervising the service, then enter the signature of the physician or non-physician practitioner providing the direct supervision in item 31.**

Here, for the first time in a guideline conceivably applicable to first party medical bills in Florida, we see the word "direct" modifying the word "supervision." However, in the very next sentence, Medicare contradicts itself by eliminating the word "direct" in the first clause. By eliminating the word "direct" in the first clause of the next sentence regarding "incident to" services, Medicare implies that an ordering physician may be able to supervise an "incident to" service without necessarily doing so "directly."

This is a reasonable inference because 42 CFR §410.32 outlines *3 different types of supervision*: General, Direct, and Personal:

---

[4] It is critical to note again that the "misrepresentation" alleged by GEICO in every claim at issue is that Dr. Gomez-Cortes's name appeared in box 31 of this form.

**(i)** *General supervision* **means the procedure is furnished under the physician's overall direction and control,** **but the physician's presence is not required during the performance of the procedure.** **Under general supervision, the training of the nonphysician personnel who actually perform the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the physician.**

**(ii)** *Direct supervision* **in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.**

**(iii)** *Personal supervision* **means a physician must be in attendance in the room during the performance of the procedure.**

The CFR provides that in order to be compensable, "incident to" services "must be furnished under *at least* a general level of physician supervision as defined" in the statute.  By referring generally to this portion of the CFR and eliminating the word "directly" in the first clause of the second sentence regarding box 31 of the HCFA, the Medicare Manual appears to be stating that a physician providing *at least* a general level of supervision may still appropriately bill for services provided by "nonphysician personnel" so long as he accepts responsibility for their training and equipment and it is provided under his "overall direction and control."  GEICO admits that Dr. Gomez-Cortes did this much by agreeing to act as the Medical Director at Palmetto Health.

GEICO's accusation of fraud with respect to the use of Dr. Gomez-Cortes's name in box 31 of the HCFA forms is thus an incredibly narrow legal conclusion.  It posits that the *only* circumstance under which a doctor's name may be truthfully inserted in box 31 for "incident to" services rendered by nonphysician personnel is if the doctor was in the office suite when the services were provided.  According to this narrow theory, if Dr. Gomez-Cortes was down the block at Fernandez Medical Services,[5] but always immediately available to be in Palmetto Health's office within a few minutes of being called, and Dr. Gomez-Cortes was reviewing Palmetto's records and bills on a regular basis, Palmetto Health nevertheless committed *intentional fraud* by

---

[5] Palmetto Health is located at 1840 W. 49th St., Hialeah.  Fernandez Medical Services is located around the corner at 4445 W. 16th Ave., Hialeah.

putting Dr. Gomez-Cortes's name in box 31 of HCFA bills for services rendered while he was at Fernandez.

This bald legal conclusion is presented as if it is hornbook law without citation to caselaw or any statute that specifically stands for it. The obscure and inconsistent mention in a two sentence blurb from a Medicare Processing Manual, which actually refers to *3 different kinds of supervision,* is not reliable authority for the proposition that "direct" (meaning contemporaneous, in-office) supervision of "incident to services" is the *only* basis upon which a supervising physician's name may be inserted into box 31 of a HCFA form billing for services provided by nonphysician personnel.

The plausibility of GEICO's fraud accusation is tethered completely to this very narrow and unsupported legal conclusion. Every single "fact" GEICO offers to argue fraud is designed solely to show that Dr. Gomez-Cortes did not provide contemporaneous, in-office supervision of every individual service allegedly at issue.

While GEICO's "facts" may support a plausible inference that Dr. Gomez-Cortes was not standing in the Palmetto Health office when every one of the 17,498 services billed were performed, GEICO offers no facts which plausibly demonstrate the level of supervision *Dr. Gomez-Cortes actually provided* over these services. It offers no facts to plausibly suggest that Dr. Gomez-Cortes was not providing a <u>general</u> level of supervision.

The absence of any allegation as to the level of supervision Dr. Gomez-Cortes actually provided is fatal to GEICO's claim. This is because all of its facts are offered to support the plausibility of just its narrow legal conclusion. In other words, by alleging facts which only support its own narrow legal conclusion, GEICO has, at best, alleged "the **mere possibility"** that it is entitled to the relief it seeks. <u>Pavic v. Laser Spine Inst., LLC</u>, *infra*. at *1.

It bears noting that GEICO's failure to allege facts concerning the level of supervision Dr. Gomez-Cortes actually provided cannot be the result of not knowing them, given GEICO's

averments in paragraph 274 that **"The Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full."**

Given all of this allegedly routine "expensive and time-consuming litigation" seeking "collection of the fraudulent charges" by the Defendants, there <u>must</u> be a plethora of pleadings, deposition testimony, and discovery documents (not to mention summary judgment motions/orders) which directly reveal the *actual level of supervision* that Dr. Gomez-Cortes provided over the services which are the subject of the allegedly fraudulent charges. GEICO must have reams of information at this point about where Dr. Gomez-Cortes *actually was* and what he was *actually doing* on any given day over the course of the last several years when these services were rendered. Yet GEICO offers the Court nothing in this regard and limits its factual allegations to those which suggest only that it is improbable he was physically present in the office suite as every service billed was rendered.

In short, GEICO has offered a naked legal opinion that the *only* way a licensed physician may properly bill under his name for "incident to" services provided by nonphysician personnel, regardless of what those services may be, is if he was in the room/office when the service was performed. If this legal conclusion is wrong, however, then GEICO has not even alleged a single false representation, much less fraud.

If it is a reasonable interpretation of the byzantine layers of statutes and regulations which apply here that a <u>general</u> level of supervision also permits a licensed medical doctor to bill for "incident to" services performed by nonphysician personnel, then GEICO has clearly failed to state a plausible claim that Defendants *knowingly* submitted any false bills.

The scienter component of GEICO's fraud claim, consisting as it does of interpreting Medicare guidelines for the proper submission of bills, is most analogous to those most often made

in the context of the False Claims Act.  The universal holding in evaluating the viability of such claims is that "if the defendant's interpretation of a statute or regulation was reasonable, and "*if there is no authoritative contrary interpretation*" of the rule, the relator cannot satisfy the knowledge requirement under the False Claims Act.  United States v. Space Coast Med. Assocs., L.L.P., 94 F. Supp. 3d 1250, 1262–63 (M.D. Fla. 2015)(collecting cases).

GEICO cannot and does not cite to any <u>authoritative interpretation</u> of the PIP statute which defines the level of supervision a licensed *physician* must provide over nonphysician personnel in order to bill for their services under the physician's name.

Therefore, even if the Court were to credit GEICO with having plausibly alleged that Dr. Gomez-Cortes's name appearing in box 31 of the HCFA forms was actually a false statement, it has still failed to plausibly allege that any such submission was "knowingly" false.  Under the facts plead by GEICO, it is just as likely that Dr. Gomez-Cortes provided a *general* level of supervision over the services provided at Palmetto Health as that he provided none. Having failed to plead any facts to show that Dr. Gomez-Cortes did not provide a *general* level of supervision over the services provided at Palmetto Health, or that he provided none, GEICO has failed to adequately plead that Palmetto Health and/or Dr. Gomez-Cortes "knowingly" submitted false claims.

**D.**     **GEICO'S FDUTPA and Unjust Enrichment Claims Cannot Survive The Complaint's Absence of Plausibility**

GEICO will likely argue that its claims under the FDUTPA statute (§501.201 et. seq.) and Unjust Enrichment can ultimately succeed even in the absence of intentional fraud.  This does not, however, save the claims from the heightened pleading requirements for a fraud claim.

On June 3, 2019, Chief Judge Moore of the Southern District of Florida dismissed a claim by State Farm alleging FDUTPA violations as the result of a physician's submissions of allegedly false bills, and did so pursuant to the heightened pleading requirements for fraud.  State Farm argued against such dismissal on the basis that it need not prove fraud to prevail at trial on its

FDUTPA claim.  Judge Moore rejected this argument.  (See Judge Moore's Memorandum in State Farm v. Feijoo, et. al., 18-cv-23329, ECF Doc. #56, a copy of which is attached hereto for the Court's convenience).   This same reasoning obviously applies equally to GEICO's unjust enrichment claim, as it, too, is based upon an alleged unified course of fraudulent conduct.[6]

Also militating against the plausibility of GEICO's FDUTPA claim in this case is its *admitted* failure to conduct itself as a reasonable consumer would have under the same circumstances.  Cluck-U Chicken, Inc. v. Cluck-U Corp., , 2017 WL 10275957, at *9 (M.D. Fla. June 6, 2017), *citing* Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 332 F. App'x 565, 567 (11th Cir. 2009).  In order to prevail on its FDUTPA claim in this case, GEICO must ultimately prove that a consumer in the same circumstances would likely have been deceived by Dr. Gomez-Cortes's name appearing in box 31 of the HCFA forms submitted by Palmetto Health.

By GEICO's own pleading, the only way it could possibly have been "deceived" by Dr. Gomez-Cortes's name appearing in box 31 of the HCFA forms submitted by Palmetto Health is if it blindly paid the bills without ever reviewing the documents which came with them.  After all, GEICO freely admits that every HCFA form was accompanied by a therapy note signed by the person who performed the service being billed under Dr. Gomez-Cortes's name.  As detailed further below, not only was this *not* the conduct of a reasonable "consumer," such deliberate myopia directly violates the very statutory scheme with which GEICO seeks to blanket itself.

**E.    GEICO Cannot Cherry-pick Only the Portions of Statutes it Likes**

As detailed above, GEICO weaves together portions of various state and federal statutes and secondary sources to present a legal conclusion on which it bases its allegation of fraud.  Yet,

---

[6] *See* also Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc., 295 F.R.D. 540, 545 (S.D. Fla. 2013), *citing* United States ex rel. Citizens United to Reduce & Block Fed. Fraud, Inc. v. Metro. Med. Ctr., No. 89–0592–CIV, 1990 WL 10519617, at *3 (S.D.Fla. Jan. 11, 1990) (holding that unjust-enrichment claim based on "fraudulent taking of money … must satisfy Rule 9(b)").

tellingly, GEICO leaves on the cutting room floor large swaths of the statutes which directly clash with the strait jacket GEICO is trying to force upon every medical clinic in Florida.

For example, the CFR contains "Documentation and Recordkeeping Requirements" which clearly contemplate that the payor (be it the federal government or an insurer) will require and scrutinize documentation submitted alongside a HCFA form and individually determine whether the treatment being billed was reasonable, necessary, and otherwise compliant with the requirements of the statute, before issuing payment.  See 42 C.F.R. § 410.32(d)(2).

This portion of the CFR tracks provisions of Florida's PIP statute which also clearly contemplate that insurers will actually review documentation of services provided before issuing payment.  Consider § 627.736(6)(b) and § 627.736(4)(i), which detail specific recourse for insurers any time they believe a bill has not been submitted with sufficient documentation to justify payment.

Despite the clear expectation that payors will actually review supporting documentation of services before issuing payment, the plausibility of GEICO's claim is dependent upon its having done no such thing.  GEICO claims instead to have been "defrauded" by documentation its own Complaint describes as so facially and obviously deficient that Dr. Gomez-Cortes cannot possibly have reviewed them sufficiently.  (See ECF 1, ¶112-116).  Yet GEICO points merely to the information contained in the records which were originally submitted to it as the sole basis for this accusation.[7]

With its circular "facts" GEICO unwittingly locks itself in an implausible box.  The only way GEICO could have been "defrauded" by Palmetto Health's bills is if it never looked at them

---

[7] By offering up just the information contained in Palmetto's records as evidence of the fraud it alleges, GEICO admits it chose not to utilize the statutory tools provided by the legislature to address suspected fraud.  It is respectfully submitted that GEICO's choice not to use the procedures available under these provisions operates as a waiver of its right to shop for a second bite of the apple in the forum of federal court.

in the first place.  This of course destroys any pretense to "justifiable reliance," but more importantly, fails to meet the particularity requirements of Rule 9(b).  In order to pass muster thereunder, a Plaintiff must not only describe the author, date, and content of alleged misrepresentations, it must specifically allege **the manner in which they misled the plaintiff**. Johnson Controls, Inc. v. Uribazo, 2012 WL 6652934, at *2 (S.D. Fla. Dec. 21, 2012)(internal citations omitted).  According to GEICO's own Complaint, however, the only manner in which it could possibly have been misled by Defendants' bills is if it never reviewed the documents in the first place.

By its own pleading, GEICO alleges that Palmetto Health's records were so devoid of reasonableness and/or necessity that Dr. Gomez-Cortes must have committed *fraud* by not identifying them as such.  It is simply implausible for this to be true *and* for GEICO to have missed the alleged fraud before paying the bills by which it now claims to have been defrauded.

The Court is simply not required to accept GEICO's naked legal conclusion that only "direct" supervision by a licensed physician over nonphysician personnel permits the physician's name to be placed in box 31 of HCFA forms.  Even if it were though, given the patchwork manner in which GEICO obviously conjured the conclusion, it cannot serve as the plausible basis for an allegation of intentional fraud.  Equally implausible, of course, is GEICO's logically impossible suggestion that the bills of Palmetto Health were so obviously fraudulent that anyone who looked at the records would have seen it…except GEICO.

Because GEICO has failed to set forth a plausible accusation of fraud, its Complaint should be dismissed in its entirety.

## II.    GEICO IMPERMISSIBLY LUMPS DEFENDANTS TOGETHER

Should the Court not dismiss the Complaint in its entirety, it is respectfully submitted that GEICO's RICO and Common Law Fraud claims against Martha Torres should be dismissed for lack of particularity.

In <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1380–81 (11th Cir.1997), the 11th Circuit concluded that a complaint alleging a RICO claim did not meet the Rule 9(b) particularity standard because it was devoid of specific allegations with respect to each defendant; the plaintiffs lumped together all of the defendants in their allegations of fraud. "[I]n a case involving multiple defendants ... the complaint should inform each defendant of the nature of his alleged participation in the fraud." <u>Id.</u> at 1381.

GEICO's RICO and fraud allegations repeatedly lump all of the Palmetto Health Defendants together without offering specific allegations as to each.  As an example, paragraph 634 of the Complaint alleges that "The Palmetto Health Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Palmetto Health for the Fraudulent Service."

The only specific allegation made against Martha Torres, however, is that she provided a "limited range of healthcare services" and created *accurate* notes thereof.  There is not a single averment of fact offered to support GEICO's allegation that Ms. Torres ever made a single false representation of any kind, or had any role in or responsibility for creating and submitting the HCFA forms which constitute the sum total of allegedly false statements made to GEICO

Having failed to allege any facts supporting its allegation that Ms. Torres made any false statements or knowingly participated in any aspect of billing, none of GEICO's causes of action against Ms. Torres are stated with the required particularity and must be dismissed as to her.

## II.    IF ALLOWED TO PROCEED, GEICO MUST PROVIDE A MORE DEFINITE STATEMENT

Exhibit 8 to GEICO's Complaint purports to identify 17,498 individual services provided at Palmetto Health, each one of which it alleges to have been fraudulently billed.  However, in characterizing the fraud alleged to have been committed with respect to each of these services,

GEICO repeatedly adds the caveats "in many cases" and "to the extent they were provided at all." (See Complaint generally). These caveats are the equivalent of adding multiple "and/or" qualifiers to every date of service at issue and render the allegations unfairly ambiguous.

"The Complaint's usage of several "and/or" conjunctions among other ambiguities, make the allegations against Defendants vague and ambiguous. Joe Hand Promotions, Inc. v. Creative Entm't, LLC, 978 F. Supp. 2d 1236, 1240 (M.D. Fla. 2013)(collecting cases).

GEICO's accusation of fraud is ambiguous in that it allows the pursuit of multiple and wildly different theories. "Plaintiffs in federal court are permitted to plead in the alternative, but they are not permitted to plead "in the ambiguous".  Id., citing Fed.R.Civ.Pro. 8(d)(2).

Accordingly, should the Court find that GEICO's claim may proceed, it is respectfully requested that GEICO be ordered to provide a more definite statement as to which specific treatments listed on Exhibit 4 it is alleging were not actually provided.

III.   **CONCLUSION**

If GEICO's torturously plead allegations in this Court truly had *any* plausibility, there is simply no way GEICO could ever lose any litigation over its denial of payment or that GEICO would feel compelled to pay bills for fear of it.  But GEICO obviously loses in state court so often that it is going shopping for relief in its preferred forum of federal court.[8]  GEICO transparently wishes to use this Court to establish limitations on PIP billing which it has not been able to achieve through the "legal struggle" it acknowledges to have been ongoing between insurers and medical providers for years in Florida as to the permissible scope of their services.

For all of the foregoing reasons, it is respectfully submitted that GEICO has failed to plausibly state a claim for fraud and its Complaint should therefore be dismissed in its entirety.

---

[8] Almost simultaneously with its filing in this Court, GEICO filed a virtually identical Complaint against 32 clinics, doctors and other individuals in the Southern District.  See GEICO v. Gomez-Cortez, et. al., 20-cv-21558-KMW (S.D. Fla., filed 4/13/2020).

Respectfully Submitted,


 __*/s/ Kenneth B. Schurr*__
Kenneth Schurr, Esq.
2030 S. Douglas Rd.
Coral Gables, FLA  33134
305-441-9031
counselken@schurrlaw.com
kbsservice@schurrlaw.com

Andrew P. Baratta (Pa. Bar No. 82250)
*Pro Hac Vice Pending*
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, Pa.  19006
215-914-2222
215-914-2118 (facsimile)
andrew@barattarussell.com