**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No.:  1:20-cv-21558-WILLIAMS / TORRES

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

    Plaintiffs,

vs.

JOSE DEJESUS GOMEZ-CORTES, M.D., et al.,

    Defendants.
_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS AND
ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT**

    Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum in opposition to the motion by Palmetto Health Medical Center Corp. ("Palmetto Health"), Jose DeJesus Gomez-Cortes, M.D. ("Gomez-Cortes"), Adrian Hernandez Aleman ("A. Hernandez"), Martha I. Torres, L.M.T. ("Torres"), and Tamara Y. Hernandez ("T. Hernandez") (collectively the "Moving Defendants"), to dismiss Plaintiffs' Complaint or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). See Docket No. 11.

**SUMMARY**

    In its detailed complaint, GEICO alleges – in substance – that the Moving Defendants, together with their co-Defendants Doctor Max Medical Center Corp. ("Doctor Max"), Jacqueline Leva, M.D. ("Leva"), Irene Cabrera ("I. Cabrera"), Pedro Herrera Villafranca, L.M.T. ("Herrera"),

Jorge Simon Roque, L.M.T. ("Simon"), Wellness Healthcare Clinic Corp. ("Wellness Healthcare"), Jose Ramon Cabrera ("J. Cabrera"), and Nestor Fernandez, M.D. ("N. Fernandez") submitted, or caused to be submitted, a massive amount of fraudulent no-fault ("no-fault", "personal injury protection", or "PIP") insurance billing through Palmetto Health, Doctor Max, and Wellness Healthcare to GEICO. See Docket No. 1.[1]

As discussed below, the Moving Defendants' arguments for dismissal ignore the detailed facts set forth in the Complaint and are at odds with the pertinent law, including the law that has developed in <u>numerous</u>, highly analogous no-fault insurance ("personal injury protection" or "PIP") fraud cases in the 11th Circuit, in Florida state appellate courts, and across the country.

Aside from their misleading recharacterization of GEICO's allegations, the Moving Defendants' motion relies on an equally inaccurate interpretation of the pertinent law – including a number of legal contentions that repeatedly have been raised in the past by defendants in substantially similar no-fault insurance fraud cases, and repeatedly rejected by the federal courts. Indeed, the Moving Defendants somehow manage to avoid citing to <u>any</u> of the <u>many</u> federal (and Florida appellate) decisions – in substantially similar anti-PIP fraud cases – that decisively refute every one of their arguments. As discussed herein, the Moving Defendants' motion to dismiss therefore should be denied in its entirety.

## BACKGROUND

GEICO commenced this action on April 13, 2020. See Docket No. 1. Because it is impossible to describe every aspect of the detailed, 215-page Complaint in a relatively brief

---

[1] These allegations are not pleaded in a conclusory vacuum, either. Rather, the Complaint sets forth numerous, claim-specific examples of the Moving Defendants' fraudulent misrepresentations and acts of fraudulent concealment, detailing the "who, what, when, where, and why" of a large number of the Moving Defendants' discrete fraudulent acts. See Docket No. 1, ¶¶ 1-117, 251-265, passim.

memorandum of law, GEICO respectfully refers the Court to the Complaint for the full contours of Defendants' interrelated fraudulent schemes.

At bottom, and as more fully set forth in the Complaint, GEICO alleges that the Moving Defendants pervasively billed inflated amounts for medically unnecessary and illusory services, unlawfully misrepresented the identities of the actual service providers, and concealed the fact that they were unlawfully billing GEICO for "physical therapy" services that were performed – to the extent that they were performed at all – by unsupervised massage therapists, including Torres, Herrera, and Simon. See Docket No. 1, ¶¶ 1-117, 251-265, and passim.[2]

Relatedly, GEICO alleges that Defendants Gomez-Cortes, Leva, and N. Fernandez never legitimately served as Palmetto Health, Doctor Max, and Wellness Healthcare's medical directors because, had they done so, they would have observed and put an end to the pervasive fraud and unlawful activity. See Docket No. 1, ¶¶ 1-117, 251-265, and passim. By extension, GEICO alleges that all of the Moving Defendants' PIP billing falsely represented that Palmetto Health, Doctor Max, and Wellness Healthcare were eligible to receive PIP reimbursement, when in fact Palmetto Health, Doctor Max, and Wellness Healthcare were not eligible to receive PIP reimbursement because – in violation of the Florida Health Care Clinic Act (the "Clinic Act", Fla. Stat. § 400.990, et seq.) – they operated without legitimate medical directors who legitimately fulfilled their statutory duties as clinic medical directors. Id.

---

[2] As set forth in great detail in GEICO's Complaint, massage therapy is not eligible for PIP reimbursement, and health care clinics such as Palmetto Health, Doctor Max, and Wellness Healthcare cannot recover PIP benefits for services performed by unsupervised massage therapists. Accordingly, to conceal the fact that they were billing GEICO for services provided by unsupervised massage therapists, including Torres, Herrera, and Simon, the Moving Defendants falsely represented, in virtually all of their "physical therapy" bills, that Gomez-Cortes, either personally performed the "physical therapy", or else directly supervised the "physical therapy". See Docket No. 1, ¶¶ 64-117, and passim. This made it appear as if the putative "physical therapy" services were lawfully provided, lawfully billed, and eligible for PIP reimbursement, when in fact they were not. In actuality, Gomez-Cortes – who was in his mid to late 60s at the time – could not possibly have performed or even supervised such as massive volume of "physical therapy" services, especially in light of his superhumanly-crowded work schedule. See id.

Based on these allegations – which are pleaded in granular detail, with many claim-specific examples of the Moving Defendants' fraudulent and unlawful activity – GEICO asserts claims against the Moving Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA"), common law fraud, and unjust enrichment. Through these claims, GEICO seeks to recover the more than $2,690,000.00 it already has paid on the fraudulent billing that the Moving Defendants submitted, or caused to be submitted, through Palmetto Health, Doctor Max, and Wellness Healthcare. See Docket No. 1, ¶¶ 421-465, 556-600, and 601-645. In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of the more than $75,000.00 in outstanding and unpaid billing that the Moving Defendants submitted through Palmetto Health, Doctor Max, and Wellness Healthcare, because of the fraud and unlawful conduct alleged in the Complaint. See Docket No. 1, ¶¶ 277-285.

**ARGUMENT**

**I.    The Moving Defendants' Motion Should be Denied to the Extent That it Seeks Dismissal of Plaintiffs' Complaint Pursuant to Rule 12(b)(6)**

As discussed below, none of the Moving Defendants' arguments for dismissal has any merit. Indeed, virtually identical anti-PIP fraud complaints asserting identical causes of action – and even anti- PIP fraud complaints with a substantially lesser amount of detail – repeatedly have been held sufficient by federal courts – both within and outside of the Eleventh Circuit.

**A.    Though the Moving Defendants Attempt to Mischaracterize GEICO's Allegations and the Pertinent Law Regarding Gomez-Cortes's Failure to Supervise the Massage Therapists, GEICO's <u>Actual</u> Allegations are Legally Sufficient and Totally Plausible**

As set forth in GEICO's Complaint, and as summarized above, the Moving Defendants unlawfully billed GEICO for putative "physical therapy" services that were performed – to the

4

extent that they were performed at all – by Torres, Herrera, Simon, and other massage therapists, who were unsupervised and who held no physical therapy licenses. To make it appear as if the services were eligible for PIP reimbursement, the Moving Defendants falsely represented – in their billing for the services – that Gomez-Cortes personally performed or directly supervised the "physical therapy" services. In fact – and as set forth in detail in GEICO's Complaint – Gomez-Cortes could not possibly have performed or even supervised the "physical therapy" services that were billed through Palmetto Health, Doctor Max, and Wellness Healthcare to GEICO, especially considering his incredibly crowded work schedule and the superhuman amount of individual healthcare services he purported to perform on individual dates. See Docket No. 1, ¶¶ 64-117, and passim.

In an attempt to rebut GEICO's claims, the Moving Defendants embark on a tortured analysis of the PIP statute and the Medicare Claims Processing Manual (the "Medicare Manual"). See Docket No. 11, pp. 9-16, and passim. Though it is difficult to follow their argument, the Moving Defendants appear to contend that it was totally lawful for them to represent – in their billing for the "physical therapy" services – that Gomez-Cortes supervised the services, because Gomez-Cortes supposedly provided some level of "general" or indirect supervision to Torres and the other massage therapists who performed the "physical therapy" services at Palmetto Health, Doctor Max, and Wellness Healthcare. See id.

If this is what the Moving Defendants are driving at, they are incorrect. First, and most generally, the Moving Defendants' argument is at odds with the actual allegations in the Complaint, which are entitled to every favorable inference on this motion to dismiss. GEICO not only alleges that Gomez-Cortes, Leva, and N. Fernandez failed to "directly" supervise the purported physical therapy services – GEICO alleges that they failed to provide any supervision

5

with respect to the purported physical therapy services. See Docket No. 1, ¶¶ 70-117. Indeed, GEICO alleges detailed facts to demonstrate that Gomez-Cortes – who was in his mid-to-late SC at the time, and who was purporting to work a superhumanly-crowded schedule, typically at multiple locations, on the same dates when he was purporting to oversee massive amounts of "physical therapy" at Palmetto Health, Doctor Max, and Wellness Healthcare – could not possibly have supervised any of the purported physical therapy at Palmetto Health, Doctor Max, and Wellness Healthcare. Id. Accordingly, the Moving Defendants' "direct vs. general" supervision argument is a red herring.

Second, and in any case, the Moving Defendants' strained analysis of the PIP statute and the Medicare Manual is at odds with the plain language of the Medicare Manual and the relevant law. As set forth in GEICO's Complaint, the Moving Defendants billed for all of their purported "physical therapy" services using HCFA-1500 forms, which had to be completed in accordance with the Medicare guidelines. See Docket No. 1, ¶¶ 43, 62, 70-117, and passim. Pursuant to the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, to the extent that a physician is not actually "directly supervising" a physical therapy treatment, then the actual name of the person who is actually performing the physical therapy treatment must be listed on the HCFA-1500 form.[3]

Though the Moving Defendants struggle to find some ambiguity in the Medicare Manual, the Medicare Manual and the PIP statute are perfectly clear. So clear, in fact, that: (i) numerous

---

[3] See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set, Item 31 (requiring that the "provider" or "supplier" of the underlying healthcare service, or its representative, sign in box 31 of a HCFA-1500 bill, and further providing that "In the case of a service that is provided incident to the service of a physician or nonphysician practitioner, when the ordering physician or non-physician practitioner is directly supervising the service as in 42 CFR 410.32, the signature of the ordering physician or non-physician practitioner shall be entered in item 31. When the ordering physician or non-physician practitioner is not supervising the service, then enter the signature of the physician or non-physician practitioner providing the direct supervision in item 31.")

federal courts within the 11th Circuit – including this Court – have sustained identical RICO and other fraud-based claims to the effect that a healthcare clinic billed for "physical therapy" performed by unsupervised masseuses, and then falsely represented in its HCFA-1500 billing that a physician directly (or indirectly) supervised the masseuses; and (ii) the Florida Third District Court of Appeal recently denied PIP reimbursement to a healthcare clinic that falsely listed a physician on HCFA-1500 forms as the "direct supervisor" of purported physical therapy services, and unambiguously held that the Florida PIP statute precludes any reimbursement for any services that are performed by massage therapists. See, e.g., Government Employees Ins. Co., et al. v. Luis Lopez Mas, M.D. et al., S.D. Fla. Case No. 1:18-cv-20101-KMW, at Docket No. 71, pp. 7-13 (sustaining virtually identical PIP fraud and racketeering complaint based on virtually identical allegations to the effect that defendants falsely represented, in their PIP billing, that a physician had supervised the "physical therapy" services at issue, when in fact the services had been performed by unsupervised massage therapists); Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care, Inc., 369 F. Supp. 3d 1292, 1299-1301 (S.D. Fla. 2019)(same)[4]; Government Employees Insurance Co. et al. v. DG Esthetic and Therapy Center, Inc. et al., S.D. Fla. Case No. 1:18-cv-20921-CMA, at Docket Nos. 21, 29, 31 (same); Government Employees Ins. Co., et al. v. Alternative Medical Center of Florida, Inc., et al., S.D. Fla Case No. 1:17-cv-21375-RNS, at Docket

---

[4] Notably, after the court denied the Quality Diagnostic defendants' motion to dismiss, it ultimately granted GEICO summary judgment on its fraud, FDUTPA, and unjust enrichment claims. See Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care, 2019 U.S. Dist. LEXIS 220674 (S.D. Fla. 2019). Thereafter, the Quality Diagnostic defendants moved to vacate or alter the judgment. See Quality Diagnostic, S.D. Fla. Case No. 1:18-cv-20101-JEM, at Docket No. 152. In their motion to vacate or alter the judgment, the Quality Diagnostic defendants raised – among other things – the exact same arguments as the Moving Defendants in the present case, to the effect that "direct" supervision by a licensed physician is not required, and a healthcare clinic may lawfully bill for "physical therapy" services performed by a massage therapist, so long as the massage therapist was "indirectly" or generally supervised by a licensed physician. See id., pp. 2-6. GEICO opposed the Quality Diagnostic defendants' motion to vacate or alter the judgment, noting – just as it has in the present case – that there is no legal authority to support that proposition, which in any event is contrary to common sense. See Quality Diagnostic, at Docket No. 163, pp. 12-14. Though the court ultimately denied the Quality Diagnostic defendants' motion to vacate or alter the judgment because it was procedurally improper, the court also "agree[d] with Plaintiffs that the Motion is meritless … ." See Quality Diagnostic, at Docket No. 165.

No. 17 (same); Geico Gen. Ins. Co. v. Beacon Healthcare Ctr. Inc., 2020 Fla. App. LEXIS 2284 (Fla. 3d DCA 2020)("the PIP statute . . . precludes reimbursement [for] massage therapists" who are performing physical therapy services).

Not only is the Moving Defendants' "direct vs. general" supervision at odds with the actual allegations in the Complaint, and the weight of federal authority sustaining virtually identical PIP fraud claims based on virtually identical allegations, but it also is at odds with basic common sense. At bottom, if the Court were to credit the Moving Defendants' "general" or indirect supervision argument, then it would mean that a physician could stand in the middle of downtown Miami with a cellphone in his or her hand, "generally supervise" hundreds – or even thousands – of individual massage therapists performing physical therapy services within a 20-mile or 30-minute radius of that spot, and have those services be considered part of the physician's practice of medicine, rather than noncompensable massage. This is not the law, and the Court should decline the Moving Defendants' invitation to create such a rule.

**B.     The Moving Defendants' "Reliance" Argument is Meritless**

The Moving Defendants go on to argue that GEICO's Complaint should be dismissed because GEICO did not justifiably rely on any misrepresentations.[5] See Docket No. 30, pp. 20-21 and passim. At bottom, the Moving Defendants posit that, because GEICO supposedly knew (or

---

[5] The Moving Defendants do not articulate which counts they seek to dismiss based on their "justifiable reliance" argument. To the extent the Moving Defendants are using the "justifiable reliance" argument to seek dismissal of GEICO's FDUTPA and unjust enrichment claims, the court should reject this argument because reliance is not an element of FDUTPA or unjust enrichment claims. See, e.g., State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc., 145 F. Supp. 3d 1154, 1165 (S.D. Fla. 2015)("Under Florida law, the elements of a cause of action for unjust enrichment are: (1) plaintiff conferred a benefit on a defendant who has knowledge of that benefit; (2) defendant accepted and retained the benefit and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it.")(Internal quotations and citation omitted); Carriuolo v. GM Co., 823 F.3d 977, 985 (11th Cir. 2016)("[A] plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue ….")(Internal quotations and citation omitted).

at least had inquiry notice) that the billing submitted by the Moving Defendants was fraudulent, but paid the charges anyway, GEICO's reliance could not have been justifiable. Id.

The Moving Defendants are incorrect, for several reasons. First, and most generally, reliance is a fact-intensive issue that is not properly resolved on a motion to dismiss pursuant to Rule 12(b)(6). See, e.g., Doe v. Royal Caribbean Cruises, Ltd., 2011 U.S. Dist. LEXIS 146855 at * 9 (S.D. Fla. 2011)(whether plaintiff's reliance was reasonable in light of the defendant's actions was not a question that could be resolved on a motion to dismiss pursuant to Rule 12(b)(6)); Uphoff v. Wachovia Sec., LLC, 2009 U.S. Dist. LEXIS 116679 at * 15 (S.D. Fla. 2009)("The question of whether Plaintiff's reliance was reasonable is a factual issue that cannot be resolved at the motion to dismiss stage."). In this context, it would be especially inappropriate to dismiss based on the Moving Defendants' reliance argument, because the argument is predicated on conclusory speculation about what GEICO knew, and when GEICO knew it. In actuality, GEICO has pleaded facts to demonstrate that the Moving Defendants acted to conceal their interrelated fraudulent schemes, that GEICO was under statutory and contractual obligations to promptly and fairly process claims within 30 days, and that the facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. See Docket No. 1, ¶¶ 268-276, and passim. It is GEICO's well-pleaded allegations – and not the Moving Defendants' conclusory statements – that are entitled to the benefit of every reasonable inference on this motion to dismiss.

Second, and in any case, GEICO was entitled – as a matter of law – to rely on the representations in the Moving Defendants' PIP claims. See, e.g., Government Employees Ins. Co., et al. v. Quality Diagnostic Health Care, Inc., et. al, S.D. Fla. Case No. 18-cv-20101-JEM, at Docket

9

No. 125, p. 18 (rejecting similar "reliance" arguments in context of summary judgment motions, and noting that "GEICO was entitled to rely upon Defendants' PIP claims"); Peak Prop. & Cas. Ins. Corp. v. Ensslin, 2014 U.S. Dist. LEXIS 69780 (M.D. Fla. 2014)("As a matter of law, the insurer is entitled to rely on the representations made by an applicant in the application for insurance."); Suite 225, Inc. v. Lantana Ins., Ltd., 2013 U.S. Dist. LEXIS 190536 at * 17 (S.D. Fla. 2013)("It is well settled that the insurer is entitled to rely on the representations of an insured, without checking all its files to determine if the insured is committing a fraud.")(Internal quotations and citations omitted). Were it otherwise, then every fraudulent PIP claimant would have a complete defense to a plaintiff-insurer's fraud claim simply by virtue of the fact that the insurer paid the claim.

Third, in keeping with the fact that GEICO was entitled to rely on the representations in the Moving Defendants' PIP claims, the No-Fault Law explicitly permits plaintiff-insurers to challenge fraudulent or unlawful PIP claims at any time, even after they are paid. See Fla. Stat. § 627.736(4)(b)(6)(permitting insurers to assert that PIP claims were medically unnecessary, fraudulent, unlawful, upcoded, etc., **"at any time, including after payment of the claim"**).[6]

Accordingly, the Moving Defendants' "reliance" argument is meritless, and their motion to dismiss should be denied.

**C.    The Moving Defendants' FDUTPA and "Reasonableness" Arguments are Meritless**

Along similar lines, the Moving Defendants contend – in totally conclusory fashion – that GEICO's FDUTPA claims should be dismissed because GEICO supposedly has not sufficiently alleged that the Moving Defendants' deceptive practices would be likely to deceive a reasonable consumer. See Docket No. 11, pp. 18-19. Again, however, questions regarding whether a

---

[6] There are obviously sound public policy reasons for this provision, and Therapy Tampa's baseless assertion that GEICO has waived its right to challenge the claims at issue in this lawsuit because it has already paid them is not only belied by the statute but also the federal courts that have considered this issue and which are referenced throughout the body of this complaint.

10

reasonable consumer would be deceived by the Moving Defendants' deceptive practices are not properly resolved via a motion to dismiss pursuant to Rule 12(b)(6). In the present case, GEICO not only has alleged that the Moving Defendants made various misrepresentations in connection with their PIP billing, but also that the Moving Defendants' PIP charges were facially-valid and that GEICO had only 30 days to process the Moving Defendants' claims. See Docket No. 1, ¶¶ 268-276, and passim. In this context – especially on a motion to dismiss where GEICO is entitled to every favorable inference – the Court should not resolve the "reasonable consumer" issue at the pleading stage.[7]

Indeed, it is worthwhile to note that courts within this District – including this Court – have denied motions to dismiss plaintiff-insurers' FDUTPA claims that were predicated on substantially identical facts, as set forth in complaints that were in all material respects substantially identical to the Complaint in the present case. See, e.g., Alternative Medical Center of Florida, Inc., supra, at Docket No. 17 (denying motion to dismiss virtually identical FDUTPA claim in substantially identical complaint alleging upcoded examination charges/billing for unsupervised massage therapists); DG Esthetic, supra at Docket No. 29 (same); Luis Lopez Mas, M.D., supra at Docket No. 71 (same); State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1312-1313 (M.D. Fla. 2014)(observing that the FDUTPA is to be "liberally construed", and rejecting motion to dismiss plaintiff-insurer's FDUTPA claims based on an automobile insurance fraud scheme).

---

[7] For their FDUTPA/reasonableness arguments, the Moving Defendants rely on Cluck-U Chicken, Inc. v. Cluck-U Corp., , 2017 WL 10275957, at *9 (M.D. Fla. June 6, 2017), and Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016), cases that involve a motion for summary judgment and a motion for class certification respectively, and are otherwise inapposite cases. See Docket No. 30, p. 18. Beyond just citing to these cases for the purposes of introducing a general rule, the Moving Defendants do not even attempt to articulate how these cases have any relevance or present any guidance to the present case.

**D. GEICO Has Pleaded its Fraud-Based Claims with the Requisite Specificity**

The Moving Defendants also argue that GEICO's fraud-based claims are not pleaded with the requisite particularity under Rule 9(b). See Docket No. 11, pp. 7-8, 16-17, and passim. The Moving Defendants are incorrect, and ignore the weight of authority from district courts within the 11th Circuit (including this Court), in which anti-PIP fraud complaints with a virtually identical, or even lesser, amount of detail were held sufficient under Rule 9(b).[8] See, e.g., DG Esthetic, supra at Docket Nos. 21, 22, 29 (denying motion to dismiss GEICO's fraud-based claims – which were pleaded with an identical level of detail as the allegations in the present case – based on argument that the complaint was insufficiently particularized under Rule 9(b)); Luis Lopez Mas, M.D., supra at Docket No. 71(same); Alternative Medical Center of Florida, Inc., supra at Docket No. 17, p. 5 (holding that "GEICO's comprehensive and granularly specific 119-page complaint" – which was pleaded with a format and level of detail that is virtually identical to the Complaint in the present case – "sufficiently states a cause of action for each of its seven counts."); Government Employees Insurance Co. et al v. Path Medical, LLC et al, M.D. Fla. Case No. 8:17-cv-02848-EAK-TGW, Docket No. 112, pp. 15-18 (sustaining fraud-based claims on allegations with a similar level of detail in PIP fraud case and noting – among other things – that "[t]he complaint details the [] [d]efendants' individual roles in the fraudulent scheme, explains how each of the [] [d]efendants' actions furthered the scheme … [t]he complaint contains numerous examples of the arrangement in support … [f]urthermore, through the attached exhibit, GEICO provides a comprehensive listing of the bills submitted to GEICO as a result of the fraud … ."); Gov't Emples. Ins. Co. v. KJ

---

[8] The Moving Defendants' reference to State Farm v. Feijoo, et. al., 18-cv-23329, ECF Doc. No. 56 is inapposite. See Docket No. 30, p. 17. While the Feijoo court dismissed the plaintiff-insurer's claims for being insufficiently specific under Rule 9(b), GEICO's Complaint in the present case is much more detailed and particular then the Feijoo complaint, and easily meets the Rule 9(b) standard. As set forth herein, every federal court, both in this district and others, have held that anti-PIP fraud complaints pled in a virtually identical matter to this one met the Rule 9(b) pleading standard.

Chiropractic Ctr. LLC, 2014 U.S. Dist. LEXIS 28913 at *18 n.4 (M.D. Fla. 2014)(GEICO stated fraud claims in anti-PIP fraud case where it set forth the "'who, what, when, and where' of the alleged scheme, including specific claim numbers, dates of loss, which clinic submitted bills, amounts paid by GEICO as well as type of fraud, date of mailing/wire, specific misrepresentations made, and parties who submitted the documents.").

At bottom, any fair reading of the Complaint should leave the respective Moving Defendants with no doubt as to their individual roles in the fraudulent scheme. For example, and as discussed above, the Defendants are alleged to have acted together to submit the fraudulent billing through Palmetto Health, Doctor Max, and Wellness Healthcare to GEICO, with Gomez-Cortes falsely purporting to supervise a massive amount of "physical therapy" services, Torres, Herrera, and Simon performing healthcare services at Palmetto Health, Doctor Max, and Wellness Healthcare without the appropriate supervision, and all of the Palmetto Health, Doctor Max, and Wellness Healthcare Defendants acting together to cause the fraudulent billing for those services to be submitted through Palmetto Health, Doctor Max, and Wellness Healthcare, respectively, to GEICO. See Docket No. 1, ¶¶ 1-276. This is more than sufficient to satisfy Rule 9(b).

**E.     GEICO Has Sufficiently Alleged its Claims Against Torres, and Has Not Engaged in any Improper "Group Pleading"**

Relatedly, the Moving Defendants argue that GEICO's claims against Torres should be dismissed for lack of particularity, and because GEICO supposedly has not alleged any facts to show that Ramos "ever made a single false representation… or had any role or responsibility for creating and submitting the HCFA forms.". See Docket No. 11, pp. 7, 18-20, and passim. More generally, the Moving Defendants contend that GEICO's allegations improperly "lump" all of the Moving Defendants' together, and amounts to improper "group pleading". Id.

Again, the Moving Defendants are incorrect. As discussed above, any fair reading of GEICO's Complaint should leave the Moving Defendants no doubt as to what each of them is alleged to have done. With respect to Torres, the Complaint clearly alleges that Torres performed medically unnecessary "physical therapy" services, with the knowledge that the resulting bills would falsely represent: (i) that the "physical therapy" was medically necessary; and (ii) that she had been supervised by a licensed physician when performing the "physical therapy"; and (iii) that the "physical therapy" therefore was eligible for PIP reimbursement, when in fact it was not. See Docket No. 1, ¶¶ 64-117, and passim. What is more, the Complaint identifies the billing codes used to bill for Torres' fraudulent services, and the spreadsheet attached as Exhibit "8" to the Complaint set forth a large, representative sample of the predicate acts of mail fraud in which Torres – together with her co-Defendants – engaged.

This is sufficient at the pleading stage. See, e.g., KJ Chiropractic Ctr. LLC, supra at *13 (M.D. Fla. 2014)(rejecting similar argument, and holding that "[a]lthough GEICO has lumped the Defendants together in certain portions of the Second Amended Complaint, this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme."); Government Employees Insurance Co. et al v. Cereceda, et al., S.D. Fla. Case No. 19-cv-22206, at Docket Nos. 57, 72 (in case featuring very similar anti-PIP fraud complaint, pleaded with the same level of particularity as GEICO's Complaint in the present case, denying motion to dismiss where defendants similarly argued that GEICO had not sufficiently pleaded fraud claims against the employees of health care clinics); Orthopedic Rehab Specialty Clinics, Inc. v. State Farm Mut. Auto. Ins. Co., 2003 U.S. Dist. LEXIS 29312 at * 8 - * 9 (M.D. Fla. 2003)(rejecting similar "group pleading" argument, where insurer/counterclaim-plaintiff alleged that various counterclaim-defendants acted collectively to cause the submission of fraudulent

billing, because "such allegations are sufficient at the pleading stage to put the Counter-Defendants on notice of their alleged fraudulent conduct."); DG Esthetic, supra (denying motion to dismiss substantially similar complaint with virtually identical level of detail, pleaded in a substantially identical manner); Luis Mas, M.D., supra (finding a similar "group pleading" argument unpersuasive and held that while "GEICO lumped the Defendants together in certain portions of [the Complaint], this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme.")

In this context, while it is true enough the GEICO does not allege that Torres personally dropped a fraudulent PIP bill into the mailbox, GEICO is not obligated to make such allegations, considering Torres's well-pleaded role as one of the primary providers of the fraudulent services in Palmetto Health's fraudulent scheme. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., at Docket No. 5, pp. 15-18, and 9 F. Supp. 3d at 1311 (though defendants in a highly-analogous PIP fraud case made similar arguments, the Court nonetheless held that the plaintiff-insurer's complaint, which contained a level of detail similar to GEICO's Complaint in the present case, satisfied Rule 9(b)); Cereceda, supra (same); State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 U.S. Dist. LEXIS 107005 at * 17 - * 18 (S.D. Fla. 2011) (though defendants in PIP fraud case made similar arguments, the court nonetheless held that the plaintiff-insurer's complaint, which contained a level of detail similar to GEICO's Complaint in the present case, satisfied Rule 9(b)).

## II. Defendants' Motion Should be Denied to the Extent That it Seeks a More Definite Statement Pursuant to Rule 12(e)

Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. Because of the notice pleading standard in federal court, motions for more definite statement are disfavored and should be granted

15

only if the pleading to which the motion is directed is so vague that the respondent cannot reasonably be expected to respond". Martinez v. QBE Specialty Ins. Co., 2018 U.S. Dist. LEXIS 155330 (M.D. Fla., 2018), citing Fed. R. Civ. P. 12(e). Moreover, "Rule 12(e) motions are generally disfavored because too often defendants argue that a more definite statement is needed simply to delay the progress of the plaintiff's case." Oconnor & Oconnor, LLC v. Liberty Mut. Ins. Co., 2013 U.S. Dist. LEXIS 142621 at *3 (M.D. Fla. 2013).

In this context, the Moving Defendants do not identify any portion of GEICO's Complaint that is so vague or ambiguous that they cannot reasonably prepare a response. See Docket No. 11, passim. Either Palmetto Health, Doctor Max, and Wellness Healthcare were unlawfully operated without legitimate medical directors in violation of the Clinic Act, or they lawfully operated in compliance with the Clinic Act. Either the putative healthcare services that were billed through Palmetto Health, Doctor Max, and Wellness Healthcare to GEICO were "lawfully provided" and medically necessary, or they were not. Either the Moving Defendants illegally billed GEICO for physical therapy services provided by an unsupervised massage therapist – and falsely represented in the billing that the masseuse worked under the direct supervision of a licensed physician – or they did not. Either the numerous, claim-specific examples of the Moving Defendants' fraudulent treatment and billing practices that are set forth in the Complaint are accurate, or they are not.

Simply put, GEICO's Complaint presents a straightforward, easily understandable narrative setting forth detailed facts regarding the Moving Defendants and their fraudulent activities. See Docket No. 1, passim. Indeed – and as discussed above – GEICO's Complaint in this action is sufficiently detailed and clear to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), let alone a motion for a more definite statement.

The Moving Defendants' contention that GEICO's complaint is somehow unintelligible because it uses phrases such as "in many cases" and "to the extent they were provided at all"[9] is belied by two recent decisions from district courts within the 11th Circuit in which motions for a more definite statement were denied. See Docket No. 11, pp. 19-20. Both cases – <u>Gov't Emples. Ins. Co. v. Benefica Health Ctr., Corp.</u>, 2017 U.S. Dist. LEXIS 66542 (S.D. Fla. 2017) and <u>Alternative Medical Center of Florida, Inc.</u>, supra – involved substantially similar PIP fraud complaints, featuring substantially similar allegations and a virtually identical format and level of detail.[10] In <u>Benefica</u>, the Honorable Federico A. Moreno denied the defendants' motion for a more definite statement under Rule 12(e). As Judge Moreno observed:

> The amended complaint provides more than adequate information for Defendants to respond in good faith. Defendants are on clear notice of their alleged fraudulent conduct as the amended complaint alleges, <u>inter alia</u>, that Benefica was unlawfully operating without a legitimate medical director; that the putative health care services billed through Benefica were fraudulent; and that Defendants illegally billed GEICO for services. The amended complaint is not unintelligible. To the contrary, although it does not specify all allegedly fraudulent reimbursement claims, it provides thousands of examples, each containing Benefica's claim number, the date received, CPT code, and purported date of service. To the extent any allegations are unclear due to a lack of specificity, they are more appropriately clarified by discovery.

<u>Id</u>. at *5; see also <u>Alternative Medical</u>, supra, Docket No. 17, fn. 1 (denying motion for more definite statement based – as in the present case – on the defendants' failure to meet and confer as

---

[9] The Moving Defendants also argue that GEICO's usage of "and/or" in its complaint makes the Complaint ambiguous. See Docket No. 30, p. 23. This is a wholly disingenuous and fruitless argument. GEICO's usage of "and/or" is for the most part limited to its discussion of the various requirements of the CPT codes. By way of example, paragraph 815 of the Complaint states "pursuant to the CPT Assistant, the complexity of medical decision-making is measured by the number of diagnoses and/or the number of management options to be considered"(emphasis added). The use of "and/or in this context" or in any other context in the Complaint do not make the allegations in the Complaint ambiguous in any way.

[10] For example – and as in the present case – in both the <u>Benefica</u> case and the <u>Alternative Medical Center of Florida</u> case, GEICO alleged that the defendant healthcare clinics and their associates submitted fraudulent billing for physical therapy services that unlawfully were performed by unsupervised massage therapists, falsely represented in the billing that a licensed physician had either personally performed or directly supervised the physical therapy services, and falsely represented that the services were medically necessary, and in some cases that the services actually had been performed. By extension, in both the <u>Benefica</u> case and the <u>Alternative Medical Center of Florida</u> case – as in the present case – GEICO alleged that the defendant healthcare clinics lacked legitimate medical directors, and therefore were operating in violation of the Clinic Act.

required by the local rules, but noting, in any case, that "had the Court assessed Alternative Medical's motion for a more definite statement on its merits it likely would have reached the same conclusion: the complaint 'provides more than adequate information for Defendants to respond' and is far from unintelligible.")

GEICO's Complaint is in all material respects identical to the complaints in <u>Benefica</u> and <u>Alternative Medical</u>. Therefore, GEICO respectfully submits that the present motion for a more definite statement should be denied for the same reasons that Judge Moreno denied the <u>Benefica</u> defendants' motion for a more definite statement.

Accordingly, the Moving Defendants' motion should be denied to the extent that it seeks a more definite statement.

**III.** <u>**To the Extent That the Court Finds any Defect, GEICO Requests Leave to Replead**</u>

GEICO believes that its Complaint adequately alleges its claims against Defendants. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, GEICO respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims. When a party requests leave to amend its complaint, permission generally should be freely granted. <u>See</u>, e.g., <u>Moreno v. Moore</u>, 2019 U.S. Dist. LEXIS 190792 (M.D. Fla. 2019).

## **CONCLUSION**

For the reasons stated above, the Moving Defendants' motion to dismiss and alternative motion for a more definite statement should be denied in its entirety.

Respectfully submitted,

*/s/ John Marino*
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678683)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSEL, LLP
Phone: (516) 357-3000          50
North Laura, Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
 jmarino@sgrlaw.com
ltrowell@sgrlaw.com
kwenger@sgrlaw.com

Timothy J. Bang (*pro hac vice*)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New YORK 11556
Phone: (516) 357-3000
Facsimile: (516) 357-3333
timothy.bang@rivkin.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on June 1, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice to the counsel of record on the attached service list.

*/s/ John P. Marino*

**SERVICE LIST**

John P. Marino
Lindsey R. Trowell
Kristen Wenger
SMITH, GAMBRELL & RUSSEL, LLP
50 North Laura, Street, Suite 2600
Jacksonville, Florida 32202
jmarino@sgrlaw.com
ltrowell@sgrlaw.com
kwenger@sgrlaw.com

*Counsel for Plaintiffs*

Timothy J. Bang (*pro hac vice*)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New YORK 11556
timothy.bang@rivkin.com

*Counsel for Plaintiffs*

Kenneth B Schurr
Manno & Schurr PA
2030 S Douglas Road
Suite 105
Coral Gables, FL 33134
counselken@schurrlaw.com

Andrew P. Baratta (*pro hac vice*)
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
andrew@barattarussell.com

*Counsel for Defendants, Palmetto Health Medical Center Corp, Adrian Hernandez Aleman, Jose DeJesus Gomez-Cortes, and Martha I Torres and Tamara Y. Hernandez*

Christian Carrazana
Christian Carrazana P.A.
100 NE 15 St., Suite 101B
Homestead, FL 33030
christian@carrazana-legal.com

*Counsel for Defendants, Fernandez Medical Services, Inc., Maday Fernandez, Randy Diaz and Sergios Castellanos*

Richard John Diaz
3127 Ponce De Leon Boulevard
Coral Gables, FL 33134-6816
Rick@rjdpa.com

*Counsel for Defendants, Irene Cabrera and Jose Ramon Cabrera*

Roberto Pertierra
2655 Le Jeune Road
Coral Gables, FL 33134
robertopertierra@gmail.com

*Counsel for Defendants, Irene Cabrera and Jose Ramon Cabrera*