UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.:  1:20-cv-21558-KMW

GOVERNMENT EMPLOYEES INSURANCE
CO., et. al.
Plaintiffs

v.

PALMETTO HEALTH MEDICAL CENTER,
CORP., et.al.
Defendants

_____

**PALMETTO'S REPLY TO GEICO'S RESPONSE TO THEIR MOTION TO DISMISS GEICO'S LAWSUIT AGAINST THEM**

Defendants, Palmetto Health Medical Center, Dr. Jose Gomez-Cortes, Adrian Hernandez, Martha Torres, and Tamara Hernandez (collectively "Palmetto") by and through their undersigned counsel, do hereby submit the following Reply to GEICO's Response to Defendants' Motion to Dismiss, and in support thereof aver as follows:

**I.      GEICO'S RESPONSE IS JUST A PAEAN TO ITS OWN OPINIONS**

GEICO clearly has a vision of how the PIP system in Florida *ought* to work better to serve GEICO's bottom line.  In the reality GEICO is attempting to create through the federal court system, board-certified medical doctors who've identified the need for a patient to receive what GEICO calls uncomplicated rehabilitative therapies needed as the result of an auto accident, would be required to stand in the room watching as each such therapy is administered before GEICO would have any responsibility to pay for it.

GEICO's Response to Palmetto's Motion to Dismiss admits its goal is to establish such a restriction as the law of the land by painting an apocryphal picture of "a single physician in the middle of downtown Miami with a cell phone" supervising "thousands" of physical therapy

1

services performed "within a 20-mile or 30-minute radius of that spot." GEICO urges the Court to decline the "invitation to create such a rule" (ECF 19, pg. 8).

Defendants advocate no such rule. But GEICO's scare tactic is revealing because it affirms the basic argument of Palmetto's Motion to Dismiss in that it lays bare the fallacy of GEICO's *fraud* accusation.

To see the fallacy, forget for the moment that in today's Zoom reality a simple cell phone enables physicians to be virtually (and thus fully) present in any medical facility in the *world* at the push of a button; that a simple cell phone enables physicians not just the ability to supervise but actively participate remotely in any type of medical procedure as it occurs in real time.

Focus instead on the implicit admission contained in GEICO's straw man argument. It concedes the entire point of Palmetto's Motion to Dismiss, which is simply that Florida law regarding the specific level of supervision required of licensed medical doctors over physical therapies they have prescribed for PIP patients *is not so clear as GEICO alleges*.

Once one understands the lack of clarity in the law of supervision, it becomes readily apparent that GEICO's recent blitzkrieg of multiple massive fraud litigations against medical providers in federal courts across Florida are nothing more than *GEICO's* "invitation to create a rule."

GEICO is using the federal courts to sidestep the legislature entirely. Its aim is to take advantage of the notice pleading system of federal court, which requires most allegations to be accepted as true, in order to create precedent permitting sweeping accusations of <u>criminal fraud</u> to proceed on nothing more than GEICO's self-serving construction of the law. By creating such precedent, GEICO will have effectively established the law it wants to exist in Florida.

This is because lawsuits such as these are financially impossible for any medical provider to litigate fairly. There is no hope of an even playing field when one of the combatants is a Fortune 500 company with unlimited resources and a profit motive to win the case. The only protection PIP doctors in Florida have against being branded Mafia Dons is the gate keeping function of the federal rules which require every plaintiff to set forth a *plausible* basis for so devastating an accusation as fraud.[1]

To appreciate that GEICO is attempting to merely manufacture pleading precedent rather than file legitimate grievances, look no further than its Response to Palmetto's Motion to Dismiss, which relies almost exclusively on its own successes in getting other federal courts to allow its lawsuits past the pleading stage. But like every investment banker in America learned in 2008, just because you were successful in the past does not mean you were actually right about anything.

GEICO cites to four of its federal "successes" and characterizes them as "based on virtually identical allegations" as are raised in this case.

They are not.

The arguments raised by the Defendants and the Court's reasoning in these prior cases demonstrates that they are inapposite to the argument of Palmetto in this case, which centers entirely on the implausibility of GEICO's singular legal conclusion serving as the basis for alleging intentional fraud.

The federal cases cited by GEICO are found on page 7 of its Response.

---

[1] *See* U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013)(The purposes of Rule 9(b) are to provide notice to a defendant of its alleged misconduct, prevent frivolous suits, eliminate fraud actions in which all the facts are learned after discovery, and protect defendants from harm to their goodwill and reputation)(emphasis added).

The first and most obvious distinction is that in each of the prior cases, rather than plausibility, the Defendants argued that "massage therapists without physical therapist licenses may lawfully perform physical therapy services pursuant to an exception to the general prohibition" against doing so found in Fla. Stat. § 486.161(1).  *See*, e.g., GEICO v. Luis Lopez Mas 19-cv-21183, ECF 71, Pg. 8.  The Palmetto Defendants have raised no such argument in their Motion to Dismiss and, as such, the reasoning of the Court in Lopez Mas regarding it has no applicability here.[2]

What *is* germane to the argument Palmetto has made to this Court is the *further* discussion by this Court in Luis Lopez Mas, which discussion is *not* found in the other cases listed by GEICO, nor referenced in GEICO's Response.

The reason GEICO omits the Court's further discussion in Lopez Mas is because it highlights the simple reality that Florida law regarding the level of supervision required of a licensed medical doctor over straightforward physical therapy services he has prescribed is convoluted, complex, and not conducive to simple analysis.  For example, the Court noted that with respect to physician assistants, indirect supervision, which merely requires "the easy availability or physical presence of the licensed physician for consultation and direction" and "the availability to communicate by way of telecommunication," is specifically permitted.  See 19-cv-21183, ECF 71, Pg 10, *citing* Fla. Stat. § 458.347(f) *and* Fla. Admin. Code 64B8-30.001(5).

---

[2] GEICO cites three other of its federal cases as having elicited the "same" reasoning as the Court in Lopez Mas. But in Quality Diagnostics, S.D. Fla. 18-20101, even GEICO admits that the Court's one page Order did not reach the merits of any motion as it was denied on procedural grounds.  In Alternative Medical Center of Florida, Inc., S.D. Fla. 17-21375, the Court denied Defendants' Motion as procedurally defective and as offering merely vague and conclusory assertions that GEICO's Complaint failed to track the elements of the claims made (ECF #17, pg. 3).  In DG Esthetic, S.D. Fla. 18-20921, the Defendant doctor raised entirely different arguments than in this case and then at oral argument voluntarily withdrew the arguments which were made. (See ECF #31).

Along these lines it is worth noting that indirect supervision is also allowed by Florida law for chiropractors over registered chiropractic assistants who perform essentially the same services which are at issue in this case.  <u>See</u> Fla. Sta. §460.4165.

In this case, GEICO admits that Dr. Gomez-Cortes was supervising treatments of health problems which GEICO itself characterizes throughout its Complaint as being of "low severity," and the treatments were provided by assistants whom, though unlicensed, obviously have specific education and training in the proper provision of the treatments.

It is one thing to allege Palmetto was ultimately *incorrect* about the complicated regulatory and statutory scheme regarding what type of supervision is required by a medical doctor.  It is quite another to allege that Palmetto and its people engaged in a vast criminal conspiracy to defraud GEICO based solely on having submitted bills which may ultimately be determined to have been incorrect.

This is the crux of Palmetto's plausibility argument, which GEICO's Response just ignores.  The complex interaction amongst Florida's PIP law, the Medical Practice Act, the Healthcare Clinic Act, Medicare Guidelines, and various sections of the Florida Administrative Code, is not the equivalent of a jaywalking statute.  But this is exactly GEICO's premise for alleging fraud.  GEICO weaves its way through a tapestry of dense state and federal regulations and comes out with a legal conclusion it announces to be obvious; so obvious, according to GEICO, that every medical provider in Florida who does not abide by it is basically John Gotti.

The premise of Palmetto's Motion to Dismiss is simple: If GEICO's legal conclusion is not as black and white as GEICO says it is then its Complaint fails to plausibly allege any *fraud*.

## II.     <u>PLAUSIBILITY IS THE THING</u>

Plausibility is the bugaboo for GEICO, which is why it so nakedly attempts to recast Palmetto's argument concerning the implausibility of its allegations into one which asserts a lack of justifiable reliance as its basis.  On page of 9 of its Response, GEICO summarizes its mischaracterization in this regard by stating that "GEICO was <u>entitled</u> – as a matter of law – to rely on the representations in the Moving Defendants' PIP claims."  (emphasis in the original).

Once again GEICO's protestations make Palmetto's point.  The circular factual support offered by GEICO to state its claim demonstrates that GEICO <u>never actually reviewed</u> the bills of Palmetto before issuing the payments it now claims to have been defrauded out of.  Even assuming GEICO is correct that it is "entitled as a matter of law" to rely on the representations of Palmetto, it is beyond cavil that GEICO cannot have relied on something it never even reviewed in the first place.

And here again we see GEICO's litigation onslaught for what it really is – an end run around a PIP regulatory scheme which GEICO feels disadvantages its bottom line.  The Florida legislature has provided specific mechanisms for insurers to challenge any aspect of PIP billing, particularly that which an insurer suspects may involve fraudulent conduct (e.g. Fla. Sta. §627.736(6)(b) and § 627.736(4)(i).  The PIP statute, however, obviously contemplates that insurers are actually reviewing documentation and bills submitted *before* deciding to issue payment; how else could any insurer formulate a request for more information or deny payment based on a reasonable belief that a fraudulent insurance act has occurred?

GEICO's Complaint demands that the Court credit it with having acted with justifiable reliance based merely on the allegation that it paid a bill, even when the remaining allegations of its Complaint clearly demonstrate that it paid each bill without ever looking at a single one of them.  Palmetto, on the other hand, is not asking the Court to find that GEICO did not act with

justifiable reliance, but rather that its failure to plead facts establishing justifiable reliance makes its entire fraud allegation implausible.

Because every one of GEICO's causes of action is premised entirely on fraud, and because fraud is not plausibly alleged, each claim must be dismissed as a matter of law.

### III.     "BECAUSE I SAID SO" IS NOT A LEGITIMATE ARGUMENT

GEICO defends its allegations against Martha Torres as if Ms. Torres is a child overly insistent on too many sweets rather than a vulnerable low-wage earner whose entire personal and professional life stands to be ruined by a massive federal lawsuit accusing her of being the equivalent of a foot soldier in the Gambino crime family.  In sum, GEICO argues that its fraud claims against Ms. Torres are adequately pleaded because its fraud claims are adequately pleaded.

GEICO simply ignores the fact that its own Complaint identifies Ms. Torres as *having accurately reported everything she ever did.*  It ignores the fact that its own Complaint admits that Ms. Torres did nothing to conceal any aspect of what she was doing at any time at Palmetto because *she signed her name to every record she created*.  (See ECF 1,¶108(i-xxx).

GEICO's Complaint does not contain a single factual allegation concerning Ms. Torres' involvement in creating or submitting the HCFA forms which are the entirety of misrepresentations alleged to have been made.  GEICO offers no facts to support an allegation that Ms. Torres even knew what information was on the HCFA forms.

Even giving GEICO all benefit of the doubt, its accusations against Ms. Torres add up only to the mere possibility that she knew what statements were made on HCFA forms which GEICO claims to have been fraudulent.  There are still no facts alleged to demonstrate that she knew any such statements were *false*.

Simply put, Rule 9(b) exists to protect people like Ms. Torres from being included in lawsuits such as GEICO's.

### IV.     A FRAUD COMPLAINT SHOULD NOT READ LIKE A TAKE-OUT MENU

GEICO's Response to Palmetto's request for a more definite statement poignantly demonstrates GEICO's purpose for filing this lawsuit, which is merely to lodge a Complaint that gets past the pleading stage.  Whether there is any substance behind its averments is irrelevant as it expects never to actually have to prove any of them.  This is why GEICO characterizes as a "straightforward" accusation of fraud that a specific treatment on a specific date:

A. Was not actually provided;

B. Was provided but not reasonable and necessary;

C. Was provided, reasonable and necessary, but was not properly supervised;

D. All of the above; or

E. Some combination of the above.

There are 17,498 individual dates of service alleged to be fraudulent.  For each one, GEICO offers Palmetto the above menu of choices to identify the fraud being alleged.  GEICO glosses over this with a shrug, arguing that it has essentially alleged all fraud all the time and Palmetto can just admit or deny that it committed all fraud all the time.  In this "let them eat cake" attitude we see again how GEICO views the federal pleading process – as a pesky formality devoid of any substantive requirements.

But Rule 8 says otherwise in its requirement that each "denial must fairly respond to the substance of the allegation" made in a Complaint.  (Fed. R. Civ. P. 8(2)).  And contrary to GEICO's disdainful view of the Rules, blanket denials are "almost never appropriate under the

Federal Rules of Civil Procedure. Spencer v. Coventry Health & Life Ins. Co., No. 2007 WL 4577647, at *1–2 (S.D. Ala. Dec. 27, 2007).

Nor is it fair, as GEICO suggests in its Response, that Palmetto can just figure out in discovery what the specific allegation of fraud against them with respect to each date of service actually is. The "clear intent" of Rule 9's particularity requirement "is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed. Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985).

**V.    CONCLUSION**

GEICO is entitled to its opinion about the levels of supervision required of medical doctors over physical therapy services provided to PIP patients.  It is even entitled to believe that its opinion is so unassailably correct that no one can reasonably question it. But GEICO's opinions are obviously not facts, nor law.  In order to plausibly allege that the Palmetto Defendants committed intentional fraud, GEICO must allege more than that they did not comply with GEICO's view of how the world should be.

Respectfully Submitted,

/s/ Kenneth B. Schurr
Kenneth Schurr, Esq.
2030 S. Douglas Rd.
Coral Gables, FLA  33134

Andrew P. Baratta (Pa. Bar No. 82250)
*Pro Hac Vice*
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, Pa.  19006
215-914-2222
215-914-2118 (facsimile)
andrew@barattarussell.com

9

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on June 8th, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice to the counsel of record on the attached service list.

**SERVICE LIST**

Kenneth B. Schurr
Law Offices of Kenneth B. Schurr, P.A.
2030 S. Douglas Road, Suite 105
Coral Gables, FL 33134
counselken@schurrlaw.com

| | |
|---|---|
| Andrew P. Baratta (Pro hac vice)<br>Baratta, Russell & Baratta<br>3500 Reading Way<br>Huntingdon Valley, Pa. 19006<br>215-914-2222<br>215-914-2118 (facsimile)<br>andrew@barattarussell.com<br>*counsel for Defendants, Palmetto Health Medical Center Corp, Adrian Hernandez Aleman, Jose De Jesus Gomez-Cortes, and Martha I Torres and Tamara Y. Hernandez* | John P. Marino<br>Lindsey R. Trowell<br>Kristen Wenger<br>Smith, Gambrell & Russell, LLP.<br>50 North Laura Street, Suite 2600<br>Jacksonville, Florida 32202<br>jmarino@sgrlaw.com<br>ltrowell@sgrlaw.com<br>kwenger@sgrlaw.com<br>*Counsel for Plaintiffs* |
| Timothy J. Bang (pro hac vice)<br>Rivkin Radler, LLP.<br>926 RXR Plaza<br>Uniondale, New York 11556<br>Timonthy.bang@rivkin.com<br>*Counsel for Plaintiffs* | Christian Carrazana<br>Christian Carrazana, P.A.<br>100 NE 15 Street, Suite 101B<br>Homestead, FL 33030<br>christian@carrazana-legal.com<br>*Counsel for Defendants, Fernandez Medical Services, Inc., Maday Fernandez, Randy Diaz and Sergios Castellanos* |
| Richard John Diaz<br>3127 Ponce De Leon Blvd<br>Coral Gables, FL 33134<br>Rick@rjdpa.com<br>*Counsel for Defendants, Irene Cabrera and Jose Ramon Cabrera* | |

Roberto Pertierra
2655 Le Jeune Road
Coral Gables, FL 33134
robertopertierra@gmail.com
*Counsel for Defendants, Irene Cabrera and Jose Ramon Cabrera*