UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-CV-21558-KMW

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY
 and GEICO CASUALTY CO.,

       Plaintiffs,

v.

JOSE DEJESUS GOMEZ-CORTES, M.D.,
FERNANDEZ MEDICAL SERVICES, INC.,
MADAY FERNANDEZ, PAIN RELIEF CLINIC OF
HOMESTEAD CORP., LESYANI MARTINEZ,
LMT, DANIEL COLLAZO LOPEZ, HEALTH
AND WELLNESS SERVICES, INC., ANDRELVIS
PEREZ, MANUEL ALEJANDRO FRANCO, M.D.,
WELLNESS HELATHCARE CLINIC CORP., **JOSE
RAMON CABRERA**, TAMARA Y. HERNANDEZ,
**NESTOR FERNANDEZ, M.D.**, RESTORATIVE
THERAPY CENTER INC., RANDY DIAZ, SERGIO
CASTELLANOS, YURITZA HERNANDEZ GOMEZ, LMT.,
MAYULYS M. GALLO, LMT., GLOBAL CARE
SERVICES, INC., SILVIO MICHEL MESTRE DREKE,
ARMANDO DE FERIA, MD., MARIO LOPEZ, LMT.,
**DOCTOR MAX MEDICAL CENTER CORP**., ADRIAN
HERNANDEZ ALEMAN, **IRENE CABRERA**, **JACQUELINE
LEVA MD.**, **PEDRO HERRERA VILLAFRANCA, LMT.,**
JORGE SIMON ROQUE, LMT., PALMETTO HEALTH MEDICAL
CENTER CORP., AND MARTHA I. TORRES, LMT.,

       Defendants.
_____/

1

## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.PRO. 12(b)(6) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT PURSUANT TO FED.R.CIV.PRO. 12(e)</u>

For this Motion, the Defendants, JOSE RAMON CABRERA, NESTOR FERNANDEZ, M.D., DOCTOR MAX MEDICAL CENTER CORP., IRENE CABRERA, JACQUELINE LEVA MD., and PEDRO HERRERA VILLAFRANCA, LMT. (hereinafter collectively "Max Defendants"), by and through their undersigned counsel, do hereby Move this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiff's Complaint for failure to state a cause of action for which relief can be granted. Alternatively, pursuant to Federal Rule of Civil Procedure 12(e), Max Defendants move for a more definite statement or an order requiring re-pleading of the action and in support thereof aver as follows:

## I.    <u>OVERVIEW</u>

1. On April 13, 2020, the GEICO Plaintiffs ("Geico") filed 3,770 pages of Complaint and Exhibits. This 49 count complaint seeks declaratory relief under 28 U.S.C. § § 2201, 2202, damages for alleged violations of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(d), a RICO conspiracy, Fla. Stat. § 772.103, Florida's RICO statute, Fla. Stat. § 501.201, Florida's Unfair and Deceptive Trade Practices Act, common law fraud and unjust enrichment.

2. The GEICO entities are insurance companies, all of which were actively transacting business in the state of Florida.

3. Geico's dispute stems from their payment of no-fault insurance benefits pursuant to Fla. Stat. § 627.736 for medical treatment rendered to patients covered under insurance policies issued by GEICO. The payments resulted from claims submitted by Defendants who are licensed by Florida's Agency for Health Care Administration.

2

4.  The complaint attaches a spreadsheet itemizing thousands of individual treatment modalities rendered to undisclosed patients of the corporate Max Defendants.

5.  Notwithstanding GEICO's admittedly detailed knowledge of Florida's no fault statute, which allows insurers three months from the receipt of each claim to: conduct extensive fraud investigations, to obtain sworn statements from insureds and medical providers, request additional medical documentation and obtain independent medical examinations and physician review of medical record reviews, GEICO, after having Florida licensed claims adjusters perform a detailed, unbiased investigation into each claim, paid the Max Defendants for many of the treatments performed.

6.  Apparently, no subject claim was reported to the Florida Department of Insurance Regulation for fraud and no single claim was ever sent to a physician to independently determine whether it was medically necessary. Examinations under oath were not requested with the exception of perhaps a few claims.

7.  Now, years after payment of these claims, GEICO repudiates its contractual obligations for every claim submitted by Max Defendants under the guise that they "*recently*" learned of an alleged fraudulent scheme, with the full knowledge that defense counsel cannot change a contingency fee, and, that on an hourly basis, an attorney's bill to defend a complaint such as this will be more expensive than giving GEICO a judgment, paying the claim in full, going out of business and/or filing for bankruptcy.

8.  GEICO's complaint, including attachments, is a textbook example of a "shotgun" pleading, the practice of which has been repeatedly condemned in this Circuit. The complaint contains several paragraphs of verbose, rambling, and at times, slanderous

allegations covering 3,770 pages with 49 causes of action, each of which adopt all of the preceding allegations in their entirety.

## II.      GROUNDS FOR DISMISSAL

9.  The complaint, sounding in fraud, falls woefully short of the clear heightened pleading requirements set forth in Fed. R. Civ. P. 9(b) that mandate a showing of the specific acts of fraud applicable to each defendant. Boilerplate, conclusory allegations that have been regurgitated ad nauseam, do not meet the minimum pleading requirements when fraudulent conduct is at the core of the action. Thus, the complaint should either be dismissed or ordered to be re-pled.

10. Plaintiffs' complaint rests entirely on purely legal conclusions cloaked as factual allegations that make no sense on its face.

11. Plaintiffs' **first cause of action** seeking Declaratory Relief under 28 U.S.C. §§ 2201 and 2202, as to corporate Defendant DOCTOR MAX MEDICAL CENTER CORP. ("Doctor Max"), must be dismissed, with prejudice, because it fails to demonstrate a real and immediate threat of future harm. The allegations in the complaint involve *only past conduct*. The fraud provisions incorporated in Florida's no-fault statute, § 627.736(4)(i), allow the insurer 90 days to investigate any reasonable belief of suspected fraud; the ability to deny all fraudulent claims and report them to Florida's Office of Insurance Regulation. Because Plaintiffs' control the ability to pay or deny any suspected fraud claims, there cannot realistically be any threat of future harm.

12. Plaintiffs' RICO claims against the other individuals, Max Defendants, brought pursuant to 18 U.S.C. § § 1962 (c) and (d) must also be dismissed with prejudice[1].

13. Both counts fatally fail to satisfy the "distinctiveness" requirement that "persons" operating through a RICO "enterprise" must be separate and distinct from the enterprise itself. Because a corporation can only operate through its officers, directors, employees and agents, the distinctiveness requirement cannot be circumvented by merely alleging a corporate RICO enterprise consisting of its own employees or associates who carry on the regular affairs of the corporation. In short, an individual cannot be sued on a mere theory of osmosis when he or she was acting in the course of the employment. This pleading defect is irreparable.

14. Notwithstanding, Plaintiffs' RICO allegations are further defective in that there are no allegations as to crucial elements such as when the enterprise formed, its structure, who had organizational knowledge, control and decision making, and perhaps most important, the existence of at least two predicate acts committed by each Max Defendant. *Detailed allegations* of each and every one of the RICO elements must be adequately set forth against each defendant to state a viable cause of action.

15. Plaintiffs' RICO conspiracy against all Max Defendants, likewise fail, largely for the same reasons already discussed. Additionally, an actionable conspiracy requires an actionable underlying tort or wrong. *See Rey v. Phillip Morris, Inc.*, 75 So. 3d 378, 381 (Fla. 3d DCA 2011).

---

[1] See Plaintiffs' **twentieth cause of action** and **twenty-first cause of action** (as to Defendants JORGE RAMON CABRERA and NESTOR FERNANDEZ, M.D.); **thirty-eighth cause of action** (as to Defendant IRENE CABRERA and JACQUELINE LEVA MD.); and **thirty-ninth cause of action** (as to IERNE CABRERA, JACQUELINE LEVA MD., and PEDRO HERRERA VILLAFRANCE, LMT.).

16. Plaintiffs' state law RICO claims brought against Defendants[2], pursuant to Fla. Stat. § 772.103 similarly and irreparably fail as a matter of law and must be dismissed. This Circuit has held that the legal analysis applied to federal RICO claims is "equally applicable" to state RICO claims brought pursuant to Fla. Stat. § 772.103. Thus, the same failure to satisfy the "distinctiveness" pleading requirement as with the Federal RICO counts and the related arguments justify dismissal of this count as well.

17. Plaintiffs' **fortieth cause of action** alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), brought against corporate Defendant DOCTOR MAX, pursuant to Fla. Stat. §501.201, also fail and must be dismissed. Pursuant to Fla. Stat. §501.212 (4)(a), this cause of action is not applicable to any "person" or "activity" regulated by Florida's Office of Insurance Regulation. ("OIR"). The complaint concedes that GEICO is an insurance company engaged in the "activity" of insurance, and, in the course of that activity have issued policies, adjusted and paid claims for no-fault benefits. As a result, this claim fails as a matter of law.

18. In addition, when FDUTPA allegations are based on fraudulent conduct the heightened pleading requirements of Fed. R. Civ. P. 9 (b) applies, requiring the even greater burden of setting forth all allegations of fraud with particularity as to each individual defendant. The FDUTPA claim merely sets forth a single, threadbare, conclusory allegation that all Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices. Accordingly, the FDUTPA allegations must be dismissed.

---

[2] See Plaintiffs' **twenty-third cause of action** (as to Defendants JORGE RAMON CABRERA and NESTOR FERNANDEZ, M.D.) and **forty-first cause of action** (as to Defendants IRENE CABRERA, JACQUELINE LEVA MD., and PEDRO HERRERA VILLAFRANCA, LMT.).

6

19. Plaintiffs' **forty-second cause of action** alleging common law fraud claims against corporate Defendant DOCTOR MAX must be dismissed in light of the failure to meet the pleading requirements Fed. R. Civ. P. 9(b), requiring that fraud be plead with specificity as to each defendant, and that conclusory allegations of fraud are insufficient. A complaint for fraud must allege the details of the fraudulent acts, when they occurred, and who engaged in them. Given the "shotgun" nature of the complaint, plaintiffs' fraud counts must be dismissed and re-pled to give each Defendant notice of the specific acts of misconduct against them.

20. Plaintiffs' **forty-third cause of action** alleging claims for unjust enrichment against corporate Defendant DOCTOR MAX must be dismissed with prejudice. Florida law requires that (a) a benefit must pass directly from the plaintiff to defendant and (b) that there is no available remedy at law. There are no factual allegations that individual Defendants received any direct benefit. Further, as to all Max Defendants, the complaint fails to establish that no other available legal remedies exist. To the contrary, the complaint sets forth five other legal remedies, aside from the declaratory relief count. Further, Florida's no-fault statute, Fla. Stat. §627.736 (12) specifically provides a private right of action for insurance companies to recover damages resulting from no-fault benefits paid to medical providers in cases of insurance fraud, based on the exact conduct described in the complaint. Since Florida law provides an available remedy, GEICO will never be able to make the required showing needed to assert an unjust enrichment claim.

21. As such, under Federal Rule of Civil Procedure 12(b)(6), the complaint should be dismissed for failure to state a claim. In the alternative, the Max Defendants move for a more definite statement under Federal Rule of Civil Procedure 12(e).

7

### III.    MEMORANDUM OF LAW

Although a court is to accept the factual allegations in a complaint as true when considering a motion to dismiss, the "complaint must contain *sufficient* factual matter . . . to state a claim to relief that is *plausible* on its face." *Porter v. Duval Cty. Sch. Bd.*, 406 F. App'x 460 (11th Cir. 2010) (emphasis added). More specifically, the Plaintiff's factual allegations in the complaint must "raise a right to relief above the speculative level." *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x 849 (11th Cir. 2013). Additionally, a court should not accept as true "legal conclusions that are masked as factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). Plaintiffs have failed to plead all of their "factual allegations" at the level required. It is abundantly clear that the factual allegations in the complaint are speculative, as well as riddled and disguised in pure legal conclusions.

**A. Declaratory Relief Against Corporate Defendant Doctor Max Pursuant to 28 U.S.C. §§ 2201 and 2202.**

Plaintiffs' Declaratory Action claim against the corporate Defendant Doctor Max must be dismissed because of the failure to establish the requisite pleading requirement of demonstrating a real and immediate threat of future harm. *Elend v. Basham*, 471 F.3d 1199, 1207 (11thCir. 2006). The only allegation of injury in the complaint arises from the payment of past claims to the corporate Defendants, allegedly resulting from their fraudulent conduct. Declaratory relief is unavailable where all material rights have accrued based on past events. *See Milani v. One W. Bank FSB*, 491 Fed. Appx. 977 (11th Cir. 2012).

As pled, Plaintiffs fail to establish the existence of any "real and immediate threat" of future harm. *Elend*, 471 F.3d 1199, 1207. Plaintiffs are unable to establish this element because any such "potential" harm would be entirely contingent on the Plaintiffs making a payment to Doctor

Max. The reason that GEICO faces no future threat of harm lies with the no-fault statute which

expressly states that:

> "If an insurer has a reasonable belief that a fraudulent insurance act, for the purposes of s. 626.989 or s. 817.234, has been committed, the insurer shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, the insurer has an additional 60 days to conduct its fraud investigation. Notwithstanding subsection (10), no later than 90 days after the submission of the claim, the insurer must deny the claim or pay the claim with simple interest as provided in paragraph (d). Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Investigative and Forensic Services."

Fla. Stat. § 627.736(4)(i) (2013).

The statute specifically references Fla. Stat. §§ 626.989 and 817.234 which both detail the

exact conduct complained of by Plaintiffs, i.e., allegedly supplying false and misleading

information regarding no fault insurance claims and applications for healthcare clinic licenses.

Plaintiffs have set forth no viable reason as to why any potential concerns with respect to

exposure for the future payment of potentially fraudulent claims cannot be resolved via the

express manner articulated by the Florida Legislature, particularly when plaintiffs' complaint

acknowledges their detailed familiarity with the no-fault statute and its 2013 amendments. This

count therefore must be dismissed, with prejudice.

**B. RICO Claims Against Defendants, Jose Ramon Cabrera, Nestor Fernandez, M.D., Irene Cabrera, Jacqueline Leva MD., and Pedro Herrera Villafranca LMT., Pursuant to 18 U.S.C. §§ 1962(c) and 1962(d).**

To survive a Rule 12(b)(6) motion to dismiss, a civil RICO claim must allege "(1) conduct;

(2) of an enterprise; (3) through a pattern; (4) of racketeering." *Sedima, S.P.R.L. v. Imrex Co.*,

473 U.S. 479, 496, 105 S. Ct. 3275, 87 L.Ed.2d 346 (1985). Additionally, a plaintiff must

establish proximate cause; that was it was injured in its business or property "by reason of" the

RICO violation. *Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 6, 130 S. Ct. 983, 175 L.Ed.2d 943 (2010). As will be discussed, Plaintiffs' have failed to allege: (1) a RICO enterprise separate and distinct from the individual persons as required by Section 1962(c); (2) a RICO enterprise separate and apart from the pattern of racketeering activity; (3) predicate acts of racketeering; and (4) have also failed to satisfy the "operation or management test."

### a. Plaintiffs' Failure to Satisfy Distinctiveness Requirements

Section 1962(c) of the RICO statute, in pertinent part states that:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Under controlling precedent, a cause of action for a RICO claim requires a plaintiff to allege and prove the existence of two distinct entities: (1) a "person," and (2) an "enterprise" that is not simply the "person" referred to by a different name. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-162 (2001). In this case, Plaintiffs have alleged that corporate Defendant Wellness Healthcare is an ongoing "enterprise" (Compl. ¶¶ 422, 430) and that Defendants **J. Cabrera**, T. Hernandez, Gomez-Cortes, and **N. Fernandez, M.D.** are employed by or associated with the enterprise. (Compl. ¶¶ 423, 431). Additionally, Plaintiffs have alleged that corporate Defendant **Doctor Max** is an ongoing "enterprise" (Compl. ¶¶ 557, 565) and that Defendants Aleman, **I. Cabrera**, **Leva**, Gomez-Cortes, **Herrera**, Simon, and M. Lopez are employed by or associated with that enterprise. (Compl. ¶¶ 558, 566). These allegations do not meet the test for a RICO cause of action; the person and the enterprise must be distinct, and here, it is not. "[T]he distinctiveness requirement cannot be circumvented by alleging a RICO enterprise that consists merely of a corporate defendant [person] associated with its own

employees or agents carrying on the regular affairs of the defendant." *Abraham Inetianbor v. Cashcall, Inc.*, 2016 WL 4250644 (S.D. Fla. 2016); citing *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So.2d 565, 575 (Fla. 3rd DCA 2004); *See also*, *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1260 (S.D. Fla. 2004) (holding that distinctiveness requirement was not met where alleged enterprise consisted of corporation, employees, outside counsel, agents, and consultants). Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such enterprise, and in the case where the enterprise is a corporation, the enterprise is, in reality no more than the individual employees and agents of the corporation. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2nd Cir. 1994). Thus, where employees of a corporation associate together to commit a pattern of predicate acts, in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation. *Id*.

In *Brian Ray, et.al. v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1345-45 (11th Cir. 2016), the Eleventh Circuit Court of Appeals recently affirmed the dismissal of a RICO complaint where the plaintiffs failed to adequately plead facts setting forth a common purpose or distinctiveness as required for a RICO enterprise. In that case, the alleged enterprise consisted of the corporate defendant, Spirit Airlines, along with two of its corporate officers and a variety of outside consultants. *Id*. at 1345-46. The court held that "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees." *Id*. at 1357. Plaintiffs' RICO allegations in this case fail for this same reason.

11

**b. Plaintiffs' Failure to Plead Elements of a RICO Enterprise and Predicate Acts of Racketeering**

While the lack of "distinctiveness" is fatal, Plaintiffs also fail to plead other crucial elements under 18 U.S.C. §1962(c) as well. For instance, Plaintiffs fail to plead facts that establish the organization or structure of the enterprise; there are no allegations that the authority over treatment plans and the resulting billing was held at all times by Max Defendants. The complaint does not address what roles the Max Defendants played within the enterprise, when they allegedly became involved in the enterprise, what conduct they allegedly undertook within the enterprise, and/or what part they undertook, if any, in directing the enterprise's affairs.

The Supreme Court, in *Boyle v. United States*, 556 U.S. 938, 941 (2009), confirmed that an alleged RICO enterprise must have some structure, holding that the structure of an enterprise consists of "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. The Supreme Court has also held that, in order to establish a RICO cause of action, a plaintiff must also allege that each of the defendants have "conducted or participated" in the enterprise's affairs, satisfying what is known as the "operation or management" test. *Reves v. Ernest & Young*, 507 U.S. 170, 179 (1993). *Reves* interpreted the language of §1962(c) "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," stating that:

> "Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of §1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required."
> *Id*. at 179

The complaint fails to allege facts regarding the structure of the enterprise and specific roles played by the individual Max co-Defendants; fails to set forth how any profits obtained from the enterprise were distributed. "Mere participation in the predicate offenses listed in RICO, even in conjunction with a RICO enterprise, may be insufficient to support a RICO cause of action." *Bennet v. Berg*, 710 F.2d 1361 (8th Cir. 1983). The complaint is devoid of any "solid information" establishing that individual Max Defendants were anything more than employees or independent contractors. *Singh v. Parnes*, 199 F.Supp.2d 152, 162-63 (S.D. N.Y. 2003) (finding plaintiff's enterprise allegations insufficient where, "other than conclusory allegations, nothing in the complaint addresses the relationships among defendants in a manner that distinguishes between the 'enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering" and failed to describe the enterprise's internal workings "or that the alleged members functioned as an integrated unit").

Many district court opinions make the distinction between providing important services to an enterprise from directing its affairs. *Amsterdam Tobacco, Inc. v. Philip Morris, Inc.,* 107 F. Supp. 2d 210 (S.D.N.Y.2000) ("[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."); *See also*, *Succession of Wardlaw v. Whitney National Bank,* 1994 WL 577442 at 5 (E.D. La. 1994) (Bank where funds were deposited and withdrawn does not become an "active participant" in a RICO enterprise even if it has knowledge that the funds were fraudulent). Courts have likewise held that mere influence over an enterprise is not sufficient to attach RICO liability. *In Re Taxable Municipal Bond Securities Litigation,* 1993 WL 534035 (E.D.La.1993). (Performing legal services do not equate to the "operation or management" of the enterprise."); *Bowdoin Construction Corp. v. Rhode Island Hospital Trust National Bank, N.A.,* 869 F. Supp. 1004,

13

1009 (D. Mass.1994) (allegation that law firm knew of client's fraudulent conduct and counseled clients to continue to participate was insufficient as a matter of law to establish necessary operation or management element). Courts have recognized that "[p]roviding important services to a racketeering enterprise is not the same as directing the affairs of the enterprise." *Jubelirer v. MasterCard International, Inc.*, 68 F. Supp. 2d 1049 (W.D.Wis.1999) ("merely having a business relationship with and performing services for such an enterprise. . . does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise").

Even accepting Plaintiffs' allegations as true, at best they show no more than the existence of a business relationship and/or the performance of services within the course of employment. These allegations, as a matter of law, do not establish that the individual defendants took part in ***directing the enterprise's affairs*** and are not sufficient to attach RICO liability. *See Goren v. New Vision International Inc.,* 156 F.3d 721, 728 (7th Cir.1998). *See also, The Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Company,* 996 F.2d 1534 (3rd Cir.1993) ("[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

### c.  The RICO Claims Fail

Plaintiffs' failure to properly assert a substantive RICO claim and to set forth any additional allegations is fatal to the RICO conspiracy claim alleged in complaint. *Rogers v. Nacchio*, 241 Fed. Appx 602, 609 (11th Cir. 2007) (holding that where a plaintiff fails to state a RICO claim and the conspiracy claim does not contain additional allegations, the conspiracy claim necessary fails). With no viable underlying RICO violation, the conspiracy count must be dismissed. Even overlooking the fatal pleading defects, Plaintiffs' have failed to comply with the

heightened pleading standard of Fed. R. Civ. P. 9(b) as the complaint fails to specify as to each individual Defendant, the two specific predicate acts they either personally committed or aided and abetted another to commit in furtherance of the alleged scheme to defraud.

**C. Florida Statute § 772.103 "RICO" Claims Against Defendants Jose Ramon Cabrera, Nestor Fernandez, M.D., Irene Cabrera, Jacqueline Leva MD., and Pedro Herrera Villafranca LMT.**

This Circuit has held that the legal analysis applied to Federal RICO claims is "equally applicable" to state RICO claims brought pursuant to Fla. Stat. § 772.103. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004). When a corporation, such as Medical Wellness, is named as a RICO enterprise, the required pleading element of "distinctiveness" is *not met* through allegations that corporation's employees, officers, directors and/or agents have engaged, through the enterprise, in a pattern of criminal predicate acts. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355-56. (11th Cir. 2016) ("no distinction between the corporate defendant and an enterprise composed of the corporation and some of its corporate officers"). Allegations of a RICO enterprise under Fla. Stat. § 772.103 fail as a matter of law where a corporation, through its employees and agents, associate together to commit a pattern of predicate acts, in the course of their employment on behalf of the corporation, because the "distinctiveness" requirement cannot be circumvented by the mere allegation of a corporate enterprise associating with its own employees and agents "carrying on the regular activities of the defendant." *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc*., 881 So.2d 565 (Fla. 3d DCA 2004). For brevity purposes, and to avoid redundancy, Max Defendants adopt the remaining arguments set forth in the above section of this memorandum dealing with the Federal RICO claims.

15

**D. Florida Deceptive and Unfair Trade Practices Act Claims Against Corporate Defendant Doctor Max**

Plaintiffs' claims alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 fail for several reasons. First, as to all defendants, and as one sister district court has recognized, Fla. Stat. §501.212 (4)(a) expressly states that the act does not apply to any person or "activity regulated" under the laws administered by the Office of Insurance Regulation. ("OIR"). *Carles Construction, Inc. v. Travelers Casualty*, 2013 WL 12061474 (S.D. Fla. 2013). Plaintiffs' complaint is replete with allegations that the GEICO entities are corporations authorized to conduct business in the State of Florida as automobile insurance companies. (Compl. ¶ 7). Plaintiffs' complaint adopts and incorporates the Florida Motor Vehicle No-Fault (insurance) Law, Fla. Stat. §§ 627.730 – 627.7405. Claims submitted to the GEICO entities for reimbursement of no-fault benefits arose out of an insurance contract issued by the Plaintiffs. While Plaintiffs have creatively styled themselves as "consumers," they completely ignore the undeniable fact that the "activity" upon which their case turns, the issuance of no-fault insurance contracts in Florida and the payment of insurance proceeds under Florida's No Fault statute, are activities regulated by the OIR. *Robin Hood Group v. Florida Office of Ins. Regulation*, 888 So.2d 393 (Fla. 4th DCA 2004). (Florida Department of Insurance regulates the insurance industry). Because the FDUTPA statute does not apply to insurance activity regulated by the OIR, the fact that GEICO may be consumers is irrelevant.

Additionally, Plaintiffs' FDUTPA claim sets forth a single, threadbare, conclusory allegation that "[t]he Doctor Max Defendants engaged in unfair, deceptive and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO." Plaintiffs base this conclusion on alleged "fraudulent" misrepresentations of the corporate Max Defendant regarding their ability to collect pip

16

insurance benefits and whether the alleged "fraudulent services" were ever lawfully provided, performed or medically necessary. These pleading deficiencies are even more significant as GEICO bases all of its FDUTPA allegations on *fraudulent* conduct. Thus, the heightened pleading requirements under Fed. R. Civ. P. 9 (b) apply as to each individual defendant. *Llado-Carreno v. Guidant Corp.*, 2011 WL 705403 (S.D. Fla. 2011). (Dismissed FDUPTA claims based on allegations of fraud that were not supported by any specific factual allegations). *See also, Schreiber v. Ocwen Loan Servicing,* 2011 WL 60554425 (M.D. Fla. 2011); *Blair v. Wachovia*, 2012 WL 868878 (M.D. Fla. 2012).

This cause of action must be dismissed as to Corporate Defendant Doctor Max.

### E.  Common Law Fraud Claims Against Corporate Defendant Doctor Max

A cause of action alleging common law fraud under Florida law requires a showing of: a false material statement of fact by the defendant; known by the defendant to be false at the time it was made; made for the purpose of inducing the plaintiff to act in reliance thereon, action by the plaintiff in reliance on the correctness of the false representation and resulting damage to the plaintiff. *Poliakoff v. National Emblem Insurance Company*, 249 So.2d 477 (Fla. 3d DCA 1971); *Cavic v. Grand Bahama Development Co., Ltd.*, 701 F.2d 879 (11th Cir. 1983). This Circuit has required, pursuant to Fed. R. Civ. P. 9(b), that allegations of fraud be plead with specificity. *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562 (11th Cir. 1994). Mere conclusory allegations of fraud are insufficient: *a complaint must allege the details of the fraudulent acts, when they occurred, and who engaged in them*. *Id*. at 568. (emphasis added). This Circuit has also "endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards." *U.S. ex rel Clausen v. Laboratory Corp. of America, Inc.*, (11th Cir. 2002)

(conclusory statements failed to meet the minimum pleading standards of demonstrating fraudulent conduct and warranted dismissal as to each defendant).

GEICO'S complaint is merely a "shotgun" pleading where multiple causes of action are plead, each of which adopt *every allegation* set forth in the complaint *without specifying* which defendants are responsible for which acts or omissions. *Weiland v.Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Shotgun pleadings have been repeatedly condemned in this judicial circuit. *Payor v. Hartford Fire Ins. Co.*, 748 F.3d 1117 (11th Cir. 2014), *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979. ("No competent lawyer could compose an answer to these sweeping and multifaceted" allegations). *See also Weiland*, 792 F.3d 1313, 1323 (11th Cir. 2015) (Shotgun pleadings fail to give Defendant's adequate notice of the claims against them or the grounds upon which each claims rests).

The Eleventh Circuit has repeatedly held that when faced with a shotgun pleading, a defendant should move for a more definite statement or the court, acting on its own initiative, should order a repleader to avoid having to weed through the entire complaint and disregarding as extraneous all the allegations that have no bearing on the claim. *Ledford v. Peeples*, 657 F.3d 1222 (11th Cir. 2011), *Anderson*, 77 F.3d 364, 366 (11th Cir. 1996), *Weiland*, 792 F.3d 1313, 1320-1325 (11th Cir. 2015). ("'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with the pleading requirements"). In the alternative, the Plaintiff should be required to provide a more definite statement regarding the alleged fraudulent acts of each defendant which were ambiguously pleaded.

In a general and conclusory fashion, Plaintiff alleges that Doctor Max intentionally and knowingly made "false and fraudulent statements of material fact" and "concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent

charges through Doctor Max" for allegedly fraudulent services without say in *what* was concealed.

As to the individual Max Defendants, plaintiffs' allegations fall woefully short of the "specificity" requirements set forth in Fed. R. Civ. P. 9(b). *Cooper*, 19 F.3d 562, 568 (11th Cir. 1994). (Conclusory allegations of fraud that do not allege the details of the fraudulent acts, when they occurred, and who engaged in them are insufficient). *Id*. at 568. The "boilerplate" allegations in the common-law fraud count are the same facts that have been regurgitated ad nauseam, i.e. allegedly false representations that:

    a) Corporate Defendants were not in compliance with the Clinic Act in every claim;
    b) the services were lawfully provided;
    c) the services were medically necessary; and
    d) that the services, in many cases, were never performed

The Eleventh Circuit has endorsed dismissal of pleadings that do not meet the minimum pleading standards of Rule 9(b). *U.S. ex rel Clausen v. Laboratory Corp. of America, Inc.,* (11th Cir. 2002). For this reason, Max Defendants respectfully request that this Court dismiss Plaintiffs' common law fraud count.

### F. Unjust Enrichment Claims Against Corporate Defendant Doctor Max

At a minimum, Plaintiff's claims for unjust enrichment against Corporate Defendant Doctor Max should be dismissed with prejudice because Florida law requires that a benefit must conferred directly from the plaintiff to defendant and that there is no available legal remedy at law. *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012), *Kunzelmann v. Wells Fargo Bank, N.A.,* 2013 WL 139913 (S.D. Fla. 2013).

Notwithstanding the four other "available" legal remedies plead in its complaint, Florida's No-Fault statute, which Plaintiffs allege is common to all claims, specifically provides the exact

legal remedy to recover damages for the conduct alleged. *See* Fla. Stat. §627.736 (12). Said statute specifically creates a private right of action for insurance companies to recover damages resulting from no-fault benefits paid to medical providers in cases of insurance fraud. It references conduct described in Fla. Stat. §817.234, which includes the alleged submission of false and misleading information, in connection with claims for the payment of no-fault bills and an application for a health care clinic license under Fla. Stat. §400.995. *See*, Fla. Stat. §§ 817.234 (2), (3) and (4). Since Florida law provides an available remedy for this exact conduct, GEICO cannot show that no other available remedies exist to recover alleged unlawful no-fault payments.

## IV.    <u>CONCLUSION</u>

The complaint should be dismissed in its entirety for failure to state a plausible claim for fraud. Alternatively and minimally, the Court should strike all of the scandalous and repetitive allegations and order the Plaintiff to file a more definite statement showing the specific acts of fraud applicable to each defendant as to the common law fraud count.

WHEREFORE the Defendants, JOSE RAMON CABRERA, NESTOR FERNANDEZ, M.D., DOCTOR MAX MEDICAL CENTER CORP., IRENE CABRERA, JACQUELINE LEVA MD., and PEDRO HERRERA VILLAFRANCA, LMT., by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(e), pray this Court grant the relief requested herein.

Respectfully submitted,

s/ Richard Diaz

_____

Richard J. Diaz
F.B.N. 0767697
3127 Ponce de León Blvd.
Coral Gables, FL  33134
Telephone: (305) 444-7181
Facsimile: (305) 444-8178
E-mail: rick@rjdpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via CM/ECF and served on all parties via electronic mail this 15th day of June, 2020.

s/ Richard Diaz
By: _____
Richard J. Diaz, Esq.