UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

    Plaintiffs,                            Case No.:  1:20-cv-21558-KMW

vs.

JOSE DEJESUS GOMEZ-CORTES, M.D., et
al.,

    Defendants.
_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS AND
## ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum in opposition to the motion, by Defendants Jose Ramon Cabrera ("J. Cabrera"), Nestor Fernandez, M.D. ("Fernandez"), Doctor Max Medical Center Corp. ("Doctor Max"), Irene Cabrera ("I. Cabrera"), Jacqueline Leva, M.D. ("Leva"), and Pedro Herrera Villafranca, LMT ("Villafranca")(collectively the "Moving Defendants"), to dismiss Plaintiffs' Complaint or, in the alternative, for a more definite statement. See Docket No. 24.[1]

---

[1] To the extent that the Moving Defendants' motion seeks a more definite statement, the Moving Defendants failed to comply with Local Rule 7.1(a)(3). Local Rule 7.1(a)(3) requires a party contemplating a motion for a more definite statement to confer – or at least make a reasonable effort to confer – with the opposing party "in a good-faith effort to resolve by agreement the issues to be raised in the motion." However, the Moving Defendants did not contact Plaintiffs in any manner to discuss their supposed need for a more definite statement, as confirmed by the fact that the Moving Defendants' motion fails to include the certification required by Local Rule 7.1(a)(3). Standing alone, this warrants denial of their motion to the extent that it seeks a more definite statement. See, e.g., Local Rule 7.1(a)(3); see also Government Employees Ins. Co., et al. v. Alternative Medical Center of Florida, Inc., et al., S.D. Fla Case No. 1:17-cv-21375-RNS, at Docket No. 17, pp. 2-3 (in extremely similar federal PIP fraud action, denying the defendants'

**SUMMARY**

In its detailed Complaint, GEICO alleges – in substance – that the Moving Defendants, together with their co-Defendants Jose DeJesus Gomez-Cortes, M.D. ("Gomez-Cortes"), Wellness Healthcare Clinic Corp. ("Wellness Healthcare"), Tamara Y. Hernandez (T. Hernandez"), Adrian Hernandez Aleman ("Aleman"), Mario Lopez, L.M.T. ("M. Lopez"), and Jorge Simon Roque, L.M.T. ("Simon"), submitted, or caused to be submitted, a massive amount of fraudulent no-fault ("no-fault", "personal injury protection", or "PIP") insurance billing to GEICO. See Docket No. 1.[2]

As discussed below, the Moving Defendants' arguments for dismissal ignore the detailed facts set forth in the Complaint and are at odds with the pertinent law, including the law that has developed in numerous, highly analogous no-fault insurance fraud cases in the 11th Circuit and across the country. Indeed, the Moving Defendants somehow manage to avoid citing to any of the many federal decisions – in substantially similar anti-PIP fraud cases – that decisively refute every one of their arguments. As discussed herein, the Moving Defendants' motion to dismiss therefore should be denied in its entirety.

**BACKGROUND**

GEICO commenced this action on April 13, 2020. See Docket No. 1. Because it is impossible to describe every aspect of the detailed, 215-page Complaint in a relatively brief memorandum of law, GEICO respectfully refers the Court to the Complaint for the full contours of the Moving Defendants' and their co-Defendants' interrelated fraudulent schemes.

Briefly, however, and as more fully set forth in the Complaint, GEICO alleges – among other things – that:

(i) I. Cabrera, Aleman, Leva, Gomez-Cortes, Villafranca, Simon, M. Lopez, and Doctor Max submitted a massive amount of fraudulent PIP billing through Doctor Max to GEICO, which misrepresented the medical necessity of the underlying

---

motion for a more definite statement where the defendants "failed to comply with Local Rule 7.1(a)(3), requiring that parties confer before filing a motion … for a more definite statement.")

[2]These allegations are not pleaded in a conclusory vacuum. Rather, the Complaint sets forth numerous, claim-specific examples of the Moving Defendants' fraudulent misrepresentations and acts of fraudulent concealment, detailing the "who, what, when, where, and why" of a large number of the Moving Defendants' discrete fraudulent acts. See Docket No. 1, passim.

        healthcare services, whether the services had actually been performed in the first instance, the identities of the actual service providers, and concealed the fact that they were unlawfully billing GEICO for "physical therapy" services that were performed – to the extent that they were performed at all – by unsupervised massage therapists[3]; and

(ii)        J. Cabrera, T. Hernandez, Fernandez, Gomez-Cortes, and Wellness Healthcare also submitted a massive amount of fraudulent PIP billing through Wellness Healthcare to GEICO, which misrepresented the medical necessity of the underlying healthcare services, whether the services had actually been performed in the first instance, the identities of the actual service providers, and concealed the fact that they too were unlawfully billing GEICO for "physical therapy" services that were performed – to the extent that they were performed at all – by unsupervised massage therapists.

See Docket No. 1, ¶¶ 70-267.

Relatedly, GEICO alleges that Leva, who falsely purported to serve as Doctor Max's medical director, and Fernandez and Gomez-Cortes, who falsely purported to serve as Wellness Healthcare's medical directors, never legitimately fulfilled their required duties as medical directors, because – had they done so – they would have observed and put an end to the pervasive fraudulent and unlawful activity at Doctor Max and Wellness Healthcare. See Docket No. 1, ¶¶ 64-69, and passim. By extension, GEICO alleges that all of the PIP billing that the Moving Defendants and their co-Defendants caused to be submitted through Doctor Max and Wellness Healthcare, respectively, falsely represented that Doctor Max and Wellness Healthcare were eligible to receive PIP reimbursement, when in fact Doctor Max and Wellness Healthcare were

---

[3] As set forth in great detail in GEICO's Complaint, massage therapy is not eligible for PIP reimbursement, and health care clinics such as Doctor Max and Wellness Healthcare cannot recover PIP benefits for services performed by unsupervised massage therapists. Accordingly, to conceal the fact that they were billing GEICO for services provided by unsupervised massage therapists, the Moving Defendants falsely represented, in virtually all of their "physical therapy" bills, that Gomez-Cortes – a physician – either personally performed the "physical therapy", or else directly supervised the "physical therapy". See Docket No. 1, ¶¶ 64-117, and passim. This made it appear as if the putative "physical therapy" services were lawfully provided, lawfully billed, and eligible for PIP reimbursement, when in fact they were not. Id. In actuality, Gomez-Cortes could not possibly have performed or even supervised such a massive volume of "physical therapy" services, especially in light of his superhumanly-crowded work schedule. See id.

3

not eligible to receive PIP reimbursement because – in violation of the Florida Health Care Clinic Act (the "Clinic Act", Fla. Stat. § 400.990, et seq.) – they operated without legitimate medical directors who legitimately fulfilled their statutory duties as clinic medical directors. Id.

Based on these allegations – which are pleaded in granular detail, with many claim-specific examples of the Moving Defendants' and their co-Defendants' fraudulent and unlawful activity – GEICO asserts claims against the Moving Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA"), common law fraud, and unjust enrichment. Through these claims, GEICO seeks to recover the money it already has paid on the fraudulent billing that the Moving Defendants and their co-Defendants submitted, or caused to be submitted, through Doctor Max and Wellness Healthcare. See Docket No. 1, ¶¶ 421-465, and 556-600. In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of the more than $75,000.00 in outstanding and unpaid PIP billing that the Moving Defendants and their co-Defendants have submitted through Doctor Max and Wellness Healthcare, because of the fraudulent and unlawful conduct alleged in the Complaint. See Docket No. 1, ¶¶ 277-285.

## ARGUMENT

**I. The Moving Defendants' Motion Should be Denied to the Extent That it Seeks Dismissal of Plaintiffs' Complaint Pursuant to Rule 12(b)(6)**

As discussed below, none of the Moving Defendants' arguments for dismissal has any merit. Indeed, anti-PIP fraud complaints pleaded in a virtually identical manner as GEICO's Complaint in the present case – and even anti- PIP fraud complaints with a substantially lesser amount of detail – repeatedly have been held sufficient by federal courts both within and outside of the Eleventh Circuit, including by this Court.

**A. GEICO's Declaratory Judgment Claim is Legally Sufficient**

GEICO's First Cause of Action seeks a declaratory judgment to the effect that Doctor Max, Wellness Healthcare, and the other healthcare clinic Defendants in this case[4] may not recover on

---

[4] In addition to Doctor Max and Wellness Healthcare, there are six other healthcare clinic Defendants in this case, namely Defendants Fernandez Medical Services Inc. f/k/a Pacific Health Rehabilitation, Inc., Pain Relief Clinic of Homestead Corp., Health and Wellness Services Inc.,

4

any of their outstanding PIP billing, because of the fraudulent and unlawful activity described in the Complaint. See Docket No. 1, ¶¶ 277-285. The Moving Defendants contend that GEICO cannot state this claim for a declaratory judgment because GEICO failed "to establish the requisite pleading requirement of demonstrating a real and immediate threat of future harm." See Docket No. 24, p. 8.

The Moving Defendants are wrong. First, "[f]or a justiciable controversy under the Declaratory Judgment Act to exist, the alleged facts must show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Cameron v. Scottsdale Ins. Co., 2016 U.S. Dist. LEXIS 176648 at *5 (S.D. Fla. 2016)(internal quotations and citation omitted). Of course, in the present case, GEICO alleges that the Moving Defendants and their co-Defendants have submitted more than $75,000.00 in billing through Doctor Max and Wellness Healthcare to GEICO that currently remains outstanding and unpaid, and seeks a declaration that it need not pay the billing because of the fraudulent activity alleged in the Complaint. See Docket No. 1, ¶¶ 277-285, and passim. The immediate controversy therefore is obvious.

Even so, the Moving Defendants suggest that GEICO's ability to investigate or deny PIP claims somehow mandates dismissal of GEICO's declaratory judgment claim. However, the Moving Defendants never get around to explaining why this actually should be the case. Were GEICO to deny the PIP claims, Doctor Max, Wellness Healthcare, and the other Clinic Defendants then could commence a breach of contract action to recover on the PIP claims. See, e.g., Fla. Stat. § 627.736(10); State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So. 2d 1067, 1072 (Fla. 2006)(noting that "[t]he purpose of a PIP suit is to recover damages for breach of an insurance contract."); Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005)(a medical provider may bring an action for PIP benefits if the insured has assigned "his or her right to such benefits under the policy to the medical provider.") Indeed, and as explicitly alleged in GEICO's Complaint, "Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full." See Docket No. 1, ¶ 686.

---

Restorative Therapy Center Inc., Global Care Services Inc., and Palmetto Health Medical Center Corp. (collectively, with Doctor Max and Wellness Healthcare, the "Clinic Defendants").

5

Against this backdrop, federal courts in Florida – including the 11th Circuit – consistently have permitted plaintiff-insurers to seek declaratory judgments to the effect that they are not liable to pay any pending, allegedly-fraudulent insurance billing. See, e.g., State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013)(affirming declaratory judgment for insurer, to the effect that the insurer was not liable to pay pending PIP billing from healthcare provider that operated in violation of Florida law); Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care Inc., 2019 U.S. Dist. LEXIS 220674 at * 19 - * 23 (S.D. Fla. 2019)(granting GEICO summary judgment on identical declaratory judgment claim, in substantially similar PIP fraud action); Gov't Emples. Ins. Co. v. Clear Vision Windshield Repair, L.L.C., 2017 U.S. Dist. LEXIS 47353 at *11 - *12 (M.D. Fla. 2017)(denying motion to dismiss GEICO's declaratory judgment claim, which sought a declaration that it was not required to pay outstanding insurance billing because of the fraudulent activity alleged in the complaint); State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., 2014 U.S. Dist. LEXIS 172824 at *7 - *8 (M.D. Fla. 2014)(denying motion to dismiss plaintiff-insurer's declaratory judgment claim, where insurer sought a declaration that it was not liable to pay any pending, fraudulent PIP billing); State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1313 (M.D. Fla. 2014)(same).[5]

Indeed, in another recent and substantially-similar PIP fraud case, Government Employees Insurance Co. et al. v. DG Esthetic and Therapy Center, Inc. et al., S.D. Fla. Case No. 1:18-cv-20921-CMA, the defendants raised the exact same argument that the Moving Defendants now advance herein. See DG Esthetic, at Docket No. 21, pp. 7-8 (arguing, in substance, that GEICO could not show a real and immediate threat of future harm because it had the ability to investigate and deny the defendants' PIP claims). After GEICO raised the same counterarguments set forth

---

[5] In this context, it is worthwhile to note that, in Gov't Emples. Ins. Co. v. KJ Chiropractic Ctr. LLC, 2013 U.S. Dist. LEXIS 185731 at *26 - *27 (M.D. Fla. 2013), adopted by Gov't Emples. Ins. Co. v. KJ Chiropractic Ctr. LLC, 2014 U.S. Dist. LEXIS 28913 (M.D. Fla. 2014), a court in the Middle District dismissed a declaratory judgment claim seeking a different kind of declaration to the effect that GEICO was not obligated to pay "*future* No-Fault insurance claims" (emphasis in original), because there was no showing of a legitimate case or controversy regarding any as-yet-unsubmitted, prospective future claims. By contrast, in the present case, GEICO seeks a declaration that it is not liable to pay pending PIP claims that Defendants already have submitted through Clinic Defendants. As set forth above, numerous federal courts – including the 11th Circuit – have permitted insurers to seek declaratory judgments as to already-submitted and currently-pending PIP claims.

above (see DG Esthetic, at Docket No. 22, pp. 7-9), Judge Altonaga denied the DG Esthetic defendants' motion to dismiss GEICO's declaratory judgment claim. See DG Esthetic, at Docket No. 29; see also Alternative Medical Center of Florida, supra, at Docket No. 17, p. 5 (holding that a virtually identical declaratory judgment claim was legally sufficient, based on substantially similar PIP fraud claims pleaded in a substantially identical manner as GEICO's Complaint in the present case).

B.      **GEICO's RICO Claims are Legally Sufficient**

The Moving Defendants also contend that GEICO's RICO claims are not sufficient, because: (i) GEICO supposedly has not pleaded racketeering "enterprises" that are sufficiently distinct from the RICO "persons" (i.e., the individual defendants on the substantive RICO claims under 18 U.S.C. § 1962(c)); and (ii) GEICO supposedly has not sufficiently alleged that the alleged RICO "persons" participated in the operation and management of the alleged racketeering enterprises. See Docket No. 24, pp. 9-15.

Again, the Moving Defendants are incorrect. First, GEICO alleges that the individual Clinic Defendants, including Doctor Max and Wellness Healthcare – all of which are corporations – are the individual RICO enterprises. See Docket No. 1, ¶¶ 422, 557, and passim; see also 18 U.S.C. § 1961(4), defining "enterprise" to mean – among other things – "any … corporation". However, GEICO does not allege the individual Clinic Defendants to be among the RICO "persons" – i.e., the defendants on the respective RICO claims. Rather, the RICO "persons" – or the defendants in GEICO's civil RICO claims – are the natural persons who operated and managed the respective Clinic Defendant enterprises, and the individual Clinic Defendants are not defendants in GEICO's RICO claims.[6]

---

[6] For example, GEICO's Thirty-Eighth Cause of Action – for substantive RICO violations under Section 1962(c) – alleges Doctor Max to be the racketeering enterprise, but does not name Doctor Max as a defendant on the claim. Rather, the defendants on GEICO's Thirty-Eighth Cause of Action are Aleman, I. Cabrera, and Leva, the RICO "persons" who are alleged to have participated in the operation and management of Doctor Max. See Docket No. 1, ¶¶ 556-563. Thus, the RICO "persons" – namely Aleman, I. Cabrera, and Leva – are totally distinct from the Doctor Max racketeering enterprise. Along similar lines, GEICO's Twentieth Cause of Action – also for substantive RICO violations under Section 1962(c) – alleges Wellness Healthcare to be the racketeering enterprise, but does not name Wellness Healthcare as a defendant on the claim. Instead, the defendants on GEICO's Twentieth Cause of Action are J. Cabrera, T. Hernandez, Gomez-Cortes, and Fernandez, the RICO "persons" who are alleged to have participated in the operation and management of Wellness Healthcare. Accordingly, the RICO "persons" – J.

In this context, it is well-settled that corporate RICO enterprises such as the Clinic Defendants are sufficiently distinct – for RICO purposes – from their shareholders and employees, even if a corporate RICO enterprise is closely-held. See, e.g., Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1355-1356 (11th Cir. 2016)("The Supreme Court has held that, where the defendant is a natural person, he is distinct for RICO purposes from a closely held corporation of which he is the president and sole shareholder. … Thus, RICO's distinctiveness requirement is met where an individual defendant engages in a pattern of racketeering activity through a corporation, even a corporation of which the defendant is the sole shareholder.")

Indeed, in highly analogous federal anti-PIP fraud cases, federal courts consistently have rejected arguments to the effect that an owner or employee of an allegedly fraudulent healthcare practice/RICO enterprise was not sufficiently distinct from the practice/enterprise to support RICO liability. See, e.g., DG Esthetic, supra, at Docket Nos. 21 at pp. 4-5, 22 at pp. 9-11, 29, and 31 at pp. 6-9 (rejecting this argument, and denying motion to dismiss virtually identical civil RICO claims in highly-analogous action); State Farm Mut. Auto. Ins. Co. v. Radden, 2017 U.S. Dist. LEXIS 54093 at * 4 - * 5 (E.D. Mich. 2017)(rejecting this argument, and holding that plaintiff-insurer sufficiently alleged RICO enterprise that was distinct from the RICO person by alleging a healthcare practice through which the fraudulent billing was submitted as the enterprise, and its owner as the person); Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 274-275 (E.D.N.Y, 2012)(rejecting this argument); Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 368-369 (E.D.N.Y. 2012)(same); Allstate Ins. Co. v. Palterovich, 653 F. Supp. 2d 1306, 1316 (S.D. Fla. 2009)(noting that the RICO statute "imposes a 'distinctness' requirement whereby the 'person' and the 'enterprise' identified must be separate and distinct entities. … <u>This limitation applies, however, only when the singular person or entity is defined as both the person and the only entity comprising the enterprise.</u>")(Internal quotations and citations omitted)(emphasis added).

Even if there was some merit to the Moving Defendants' argument – and, as discussed above, there is not – questions regarding whether a RICO "enterprise" is distinct from the RICO "persons" or defendants should not be resolved at the pleading stage. See, e.g., Hepp v. Paul Revere Life Ins. Co., 120 F. Supp. 3d 1328, 1345 (M.D. Fla. 2015)(determining that distinctness questions were best resolved on summary judgment, not a motion to dismiss, and noting that "distinctness is

---

Cabrera, T. Hernandez, Gomez-Cortes, and Fernandez – are totally distinct from the Wellness Healthcare racketeering enterprise.

a fact-intensive inquiry that is not driven solely by formal legal relationships.")(Internal quotations and citation omitted); Lawrence Holdings, Inc. v. ASA Int'l, Ltd., 2014 U.S. Dist. LEXIS 154246 at *22 - *26 (M.D. Fla. 2014)(denying motion to dismiss RICO claims on distinctiveness grounds, despite the fact that the plaintiffs alleged that the "persons liable are the same as the alleged enterprise", because "questions of distinctiveness between RICO actors and an enterprise present a fact-intensive inquiry" that is "better suited for disposition under Fed. R. Civ. P. 56, with reference to the materials on file obtained during discovery.")

In addition, the Moving Defendants appear to contend that GEICO has not sufficiently alleged that Aleman, I. Cabrera, and Leva participated in the operation and management of the Doctor Max racketeering enterprise, or that J. Cabrera, T. Hernandez, Gomez-Cortes, and Fernandez participated in the operation and management of the Wellness Healthcare racketeering enterprise. See Docket No. 24, pp. 12-15. However, GEICO clearly alleges that Aleman and I. Cabrera owned and controlled the Doctor Max enterprise, and that Leva purported to serve as "medical director" for the Doctor Max enterprise, with the attendant legal responsibilities under the Clinic Act.

Along similar lines, GEICO clearly alleges that J. Cabrera and T. Hernandez owned and controlled the Wellness Healthcare enterprise, and that Fernandez and Gomez-Cortes purported to serve as "medical directors" for the Wellness Healthcare enterprise, again with the attendant legal responsibilities under the Clinic Act. See Docket No. 1, ¶¶ 8, 10, 20-22, 31-33, 48-54, and passim.

In this context, even lower level participants under the direction of upper management may be found to satisfy the operation and management test where they "knowingly implement[]" and "make decisions" under the direction of upper management. State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 U.S. Dist. LEXIS 107005 at * 22 - * 25 (S.D. Fla. 2011)(physicians who worked under the direction of others to perform and submit bills for medically unnecessary services sufficiently participated in the operation and management of healthcare practices that employed them). In the present case, GEICO has sufficiently alleged that the owners of the respective Clinic Defendants, and the physicians who posed as the "medical directors" of the respective Clinic Defendants, sufficiently participated in the operation and management of the Clinic Defendants so as to support GEICO's substantive RICO claims under Section 1962(c). See, e.g., DG Esthetic, supra; Government Employees Ins. Co., et al. v. Luis Lopez Mas, M.D. et al., S.D. Fla. Case No. 19-cv-21183-KMW, Docket No. 71 (sustaining substantially identical RICO claims pleaded in a

substantially identical manner against the owners and medical directors of healthcare clinics that were alleged to be racketeering enterprises).

Accordingly, the Moving Defendants' motion to dismiss should be denied.[7]

### C. GEICO's FDUTPA Claims are Legally Sufficient

In addition, the Moving Defendants advance a legally-defective argument to the effect that GEICO's FDUTPA claims fail to state a cause of action because the FDUTPA does not apply to "any person or activity regulated under the laws administered by the Office of Insurance Regulation". See Docket No. 24, pp. 16-17; Fla. Stat. § 501.212(4)(a).

This is an argument that repeatedly has been raised by defendants in virtually identical PIP fraud cases, where it has been rejected by every court to have considered it, including the 11th Circuit. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc., 427 F. App'x 714, 723 (11th Cir. 2011)( holding that because the submission of fraudulent automobile insurance claims was "not a type regulated by the Office of Insurance Regulation, the exemption of Fla. Stat. § 501.212(4)(a) does not apply."); DG Esthetic, supra at Docket Nos. 21, p. 5, 22, pp. 13-14, and 29 (rejecting identical argument); see also Quality Diagnostic Health Care Inc., supra (granting GEICO summary judgment on FDUTPA claim that was virtually identical to GEICO's FDUTPA claim in the present case); State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., 103 F. Supp. 3d 1343, 1354-1355 (S.D. Fla. 2015)(granting plaintiff-insurer summary judgment on FDUTPA claim, where "Defendants engaged in unfair and deceptive acts and practices in the conduct of their trade and commerce by unlawfully operating medical clinics, in violation of Florida law. … These deceptive acts and practices resulted in harm to Plaintiffs, Plaintiffs' insureds, and the public as a whole."); Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d at 1312-1313 (observing that the FDUTPA is to be "liberally construed", and rejecting motion to dismiss plaintiff-insurer's FDUTPA claims based on an PIP fraud scheme); State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., 2014 U.S. Dist. LEXIS 172824 at *6 - *7 (M.D. Fla. 2014)(denying motion to dismiss plaintiff-insurer's FDUTPA claim based on PIP fraud scheme).

Accordingly, the Moving Defendants' motion to dismiss should be denied.

---

[7] The Moving Defendants argue that GEICO's FCRCPA, or "Florida RICO", claims are defective for the same reasons that GEICO's federal RICO claims supposedly are defective. See Docket No. 24, p. 15. In fact, GEICO's FCRCPA claims are sufficient for the same reasons that GEICO's federal RICO claims are sufficient.

**D.     GEICO's Allegations are More Than Sufficient to Satisfy Rule 9(b)**

The Moving Defendants also posit that GEICO's fraud-based allegations are not pleaded with the requisite particularity under Rule 9(b). See Docket No. 24, pp. 16-17. The Defendants are incorrect, and ignore the weight of authority from this District and other Districts around the country, in which anti-PIP fraud complaints with a virtually identical, or even lesser, amount of detail were held sufficient under Rule 9(b). See, e.g., DG Esthetic, supra at Docket Nos. 21, 22, 29 (denying motion to dismiss GEICO's fraud-based claims – which were pleaded with an identical level of detail as the allegations in the present case – based on argument that the complaint was insufficiently particularized under Rule 9(b)); Luis Lopez Mas, M.D., supra at Docket No. 71 (same); Alternative Medical Center of Florida, Inc., supra at Docket No. 17, p. 5 (holding that "GEICO's comprehensive and granularly specific 119-page complaint" – which was pleaded with a format and level of detail that is virtually identical to the Complaint in the present case – "sufficiently states a cause of action for each of its seven counts."); Government Employees Insurance Co. et al v. Path Medical, LLC et al, M.D. Fla. Case No. 8:17-cv-02848-EAK-TGW, Docket No. 112, pp. 15-18 (sustaining fraud-based claims on allegations with a similar level of detail in PIP fraud case and noting – among other things – that "[t]he complaint details the [] [d]efendants' individual roles in the fraudulent scheme, explains how each of the [] [d]efendants' actions furthered the scheme … [t]he complaint contains numerous examples of the arrangement in support … [f]urthermore, through the attached exhibit, GEICO provides a comprehensive listing of the bills submitted to GEICO as a result of the fraud … ."); KJ Chiropractic Ctr. LLC, 2014 at *18 n.4 (GEICO stated fraud claims in anti-PIP fraud case where – as in the present case – it set forth the "'who, what, when, and where' of the alleged scheme, including specific claim numbers, dates of loss, which clinic submitted bills, amounts paid by GEICO as well as type of fraud, date of mailing/wire, specific misrepresentations made, and parties who submitted the documents.").

More generally, any fair reading of the Complaint should leave the respective Moving Defendants with no doubt as to their individual roles in the fraudulent schemes at Doctor Max and Wellness Healthcare, respectively. In particular, I. Cabrera, Aleman, and Leva are alleged to have directed the affairs of the Doctor Max enterprise, with Leva falsely posing as the "medical director" of the Doctor Max clinic, Gomez-Cortes falsely purporting to perform or supervise a massive amount of "physical therapy" at Doctor Max, Villafranca, Simon, M. Lopez performing healthcare services at Doctor Max without the appropriate level of supervision, and all of these Defendants

11

acting together to cause the fraudulent billing for those services to be submitted to GEICO. Similarly, J. Cabrera, T. Hernandez, Fernandez, and Gomez-Cortes are alleged to have directed the affairs of the Wellness Healthcare enterprise, with Fernandez and Gomez-Cortes falsely posing as the "medical directors" of the Wellness Healthcare clinic, and with Gomez-Cortes falsely purporting to perform or supervise a massive amount of "physical therapy" at Wellness Healthcare. See Docket No. 1, ¶¶ 70-267. This is more than sufficient to satisfy Rule 9(b).

Moving Defendants also posit that GEICO's Complaint should be dismissed as an impermissible "shotgun" pleading, apparently because the discrete counts that are asserted against the Moving Defendants all incorporate the same factual narrative (e.g., the factual narrative set forth in paragraphs 1-276 of the Complaint). See Docket No. 24, pp. 18-19. As discussed below, the Moving Defendants are incorrect.

"A 'shotgun' pleading results when it is impossible for a defendant to know which factual allegations of the complaint are meant to support which claims for relief." RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp., 47 F. Supp. 3d 1353, 1366 (M.D. Fla. 2014), citing Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll., 77 F.3d 364, 365 (11th Cir. 1996). In the 11th Circuit, whether or not a complaint amounts to an impermissible shotgun pleading depends on whether the discrete counts "are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1326 (11th Cir. 2015). In this context, counts that are premised on similar, if not the same, factual allegations that are incorporated "pose[] less of the symptomatic problems of shotgun pleadings." Carter v. Courtesy Auto. Group, 13-cv-143-T-30TBM, 2013 U.S. Dist. LEXIS 74505, at *2 - *3 (M.D. Fla. May 28, 2013); see also RB Jai Alai, LLC, 47 F. Supp. 3d at 1367 (rejecting motion to dismiss complaint as a shotgun pleading, where, "although Plaintiffs' Second Amended Verified Complaint re-incorporates and re-alleges all preceding paragraphs within every count", that was because "[e]ach count alleges similar violations resulting from the same factual circumstances"); Clark v. Credit Prot. Ass'n, 2016 U.S. Dist. LEXIS 83343 at *4 (M.D. Fla. 2016)("The Complaint is not a shotgun pleading, and does not violate Rule 10(b), because the claim is limited to a single set of circumstances that happen to give rise to a claim under two separate laws.")

In this context, it is worthwhile to note that – in a similar PIP fraud case entitled State Farm Mutual Automobile Insurance Company et al v. Physicians Group of Sarasota, L.L.C. et al., M.D.

12

Fla. Case No. 8:13-cv-01932 – the plaintiff-insurer's PIP fraud complaint also incorporated the same factual narrative by reference into each individual count. See Physicians Group of Sarasota, at Docket No. 1. The defendants in the Physicians Group of Sarasota case moved to dismiss, arguing that – as a result – the complaint was an impermissible shotgun pleading. Id. at Docket No. 5. Even so, the court denied the motion to dismiss in its entirety, finding – among other things – that the complaint satisfied Rule 9(b). See State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1311 (M.D. Fla. 2014).

It also is worthwhile to note that – in the Alternative Medical case – the complaint likewise incorporated the same factual narrative into each discrete count, and otherwise was highly similar in format and detail to the Complaint in the present case. See Alternative Medical Center of Florida, S.D. Fla. Case No. 1:17-cv-21375-RNS, at Docket No. 1, passim. Though the defendants in the Alternative Medical case moved to dismiss the complaint, Judge Scola denied the motion, and noted – among other things – that "GEICO's comprehensive and granularly specific 119-page complaint sufficiently states a cause of action for each of its seven counts." Alternative Medical Center of Florida, S.D. Fla. Case No. 1:17-cv-21375-RNS, at Docket No. 17, p. 5.

At bottom, all of the claims asserted in this action incorporate the same factual narrative because all of the claims in this case are based on the same factual narrative, including GEICO's detailed allegations demonstrating the impossible number of healthcare services that Gomez-Cortes purported to perform or supervise on behalf of various combinations of the Clinic Defendants on individual dates. See, e.g., Docket No. 1, ¶¶ 70-117. The Moving Defendants cannot legitimately contend that they are "in the dark" as to the nature of GEICO's claims against them. Accordingly, the Moving Defendants' motion to dismiss should be denied.

### E.     **GEICO's Unjust Enrichment Claims are Legally Sufficient**

Finally, the Moving Defendants suggest that GEICO's unjust enrichment claim is defective because: (i) GEICO supposedly has not sufficiently alleged that each of the Moving Defendants received a direct benefit from GEICO's payments on their PIP claims[8]; and (ii) GEICO supposedly has other adequate remedies at law. See Docket No. 24, pp. 19-20.

---

[8] Like some of the other arguments in the Moving Defendants' motion papers, their "no direct benefit" argument is mentioned only in passing, and the argument is not well-developed. See Docket No. 24, p. 19 (contending that GEICO's unjust enrichment claims should be dismissed because "Florida law requires that a benefit must conferred directly from the plaintiff to

Again, the Moving Defendants are incorrect, for various reasons.

First, GEICO may plead its claims in the alternative.

Second, the Eleventh Circuit specifically has recognized an insurer's right to assert an unjust enrichment claim based on fraudulent billing submitted through a clinic operating in violation of the Clinic Act. See, e.g., Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1330-1331 (11th Cir. 2016); Silver Star Health & Rehab, supra (holding "State Farm was entitled to seek a judicial remedy," including unjust enrichment, "to recover the amount it paid," improperly, to an unlicensed health clinic on behalf of its policyholders). In fact, the defendants in the substantially-similar DG Esthetic case raised these exact same arguments (e.g., that GEICO had other remedies at law, and did not sufficiently allege that each of the defendants received a direct benefit from GEICO's PIP payments). See DG Esthetic, supra at Docket Nos. 21, pp. 6-7; 22, pp. 17-18. Even so, Judge Altonaga denied the DG Esthetic defendants' motion to dismiss. See also State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., 2020 U.S. Dist. LEXIS 38156 at * 51 - * 52 (S.D. Fla. 2020)(in similar PIP fraud case, rejecting identical argument to the effect that plaintiff-insurer had adequate remedies at law, and therefore could not state its claim for unjust enrichment).

Third, GEICO has alleged facts which – drawing all reasonable inferences in favor of GEICO – indicate that each of the Moving Defendants received a sufficiently "direct" benefit from GEICO in the form of payment on the claims that they submitted, or caused to be submitted, through Doctor Max and Wellness Healthcare, respectively. In any case, "[w]hether [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage …." Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009); see also Health & Wellness Servs., supra (rejecting argument that clinic associates did not receive a sufficient benefit from the plaintiff-insurer's payments to the clinic, and noting that "there is significant case law holding that a defendant is not required to individually receive payments in order for a cause of action for unjust enrichment to exist.")(Internal quotations and citation omitted)(emphasis in original).

In short, just because the benefit of GEICO's payments on the Clinic Defendants' fraudulent PIP claims may have flowed through Clinic Defendants to the other Defendants does not demonstrate – at the pleading stage – that the benefit was "indirect". See Sierra Equity Group,

---

defendant", but not otherwise explaining why GEICO's claims in the present case fail to meet this supposed "direct benefit" requirement).

Inc., supra; see also Li v. Walsh, 2017 U.S. Dist. LEXIS 114552, *29 (S.D. Fla. 2017)("[T]his Court has recognized that an unjust enrichment claim may go forward where a benefit is conferred through an intermediary, finding that direct contact, or privity, is not the equivalent of conferring a direct benefit"); Physicians Group of Sarasota, L.L.C., supra, 9 F. Supp. 3d at 1311-1312 (rejecting identical argument, and noting that "[i]t can be reasonably inferred that individuals intimately involved with the organization and operation of the entity that directly received a benefit have benefitted themselves so as to support a claim for unjust enrichment against them in their individual capacities.")(Internal quotations and citation omitted); State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc., 20 F. Supp. 3d 1363, 1368-1369 (S.D. Fla. 2014)(rejecting identical "no direct benefit" argument, where defendant knowingly played a key role in unlawful scheme to recover PIP benefits).

Accordingly, the Moving Defendants' motion to dismiss should be denied.

## II. The Moving Defendants' Motion Should be Denied to the Extent That it Seeks a More Definite Statement Pursuant to Rule 12(e)

Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. Because of the notice pleading standard in federal court, motions for more definite statements are disfavored and generally should be granted only if the pleading to which the motion is directed is so vague that the respondent cannot reasonably be expected to respond". Martinez v. QBE Specialty Ins. Co., 2018 U.S. Dist. LEXIS 155330 (M.D. Fla., 2018), citing Fed. R. Civ. P. 12(e). Moreover, "Rule 12(e) motions are generally disfavored because too often defendants argue that a more definite statement is needed simply to delay the progress of the plaintiff's case." Oconnor & Oconnor, LLC v. Liberty Mut. Ins. Co., 2013 U.S. Dist. LEXIS 142621 at *3 (M.D. Fla. 2013).

In this context – and tellingly – the Moving Defendants do not identify any portion of GEICO's Complaint that is so vague or ambiguous that they cannot reasonably prepare a response. See Docket No. 24, passim. Either the Doctor Max and Wellness Healthcare were unlawfully operated without legitimate medical directors in violation of the Clinic Act, or they lawfully operated in compliance with the Clinic Act. Either the putative healthcare services that were billed through Doctor Max and Wellness Healthcare to GEICO were "lawfully provided" and medically necessary, or they were not. Either the Moving Defendants illegally billed GEICO for physical therapy services

15

provided by unsupervised massage therapists – and falsely represented in the billing that the masseuses worked under the direct supervision of a licensed physician – or they did not. Either the numerous, claim-specific examples of the Moving Defendants' fraudulent treatment and billing practices that are set forth in the Complaint are accurate, or they are not.

Simply put, GEICO's Complaint presents a straightforward, easily understandable narrative setting forth detailed facts regarding the Moving Defendants and their fraudulent activities. See Docket No. 1, passim. Indeed – and as discussed above – GEICO's Complaint in this action is sufficiently detailed and clear to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), let alone a motion for a more definite statement.

The Moving Defendants' contention that GEICO's Complaint is somehow vague or indefinite is belied by two recent decisions from district courts within the 11th Circuit in which motions for a more definite statement were denied. See Docket No. 11, pp. 19-20. Both cases – Gov't Emples. Ins. Co. v. Benefica Health Ctr., Corp., 2017 U.S. Dist. LEXIS 66542 (S.D. Fla. 2017) and Alternative Medical Center of Florida, Inc., supra – involved substantially similar PIP fraud complaints, featuring substantially similar allegations and a virtually identical format and level of detail.[9] In Benefica, the Honorable Federico A. Moreno denied the defendants' motion for a more definite statement under Rule 12(e). As Judge Moreno observed:

> The amended complaint provides more than adequate information for Defendants to respond in good faith. Defendants are on clear notice of their alleged fraudulent conduct as the amended complaint alleges, inter alia, that Benefica was unlawfully operating without a legitimate medical director; that the putative health care services billed through Benefica were fraudulent; and that Defendants illegally billed GEICO for services. The amended complaint is not unintelligible. To the contrary, although it does not specify all allegedly fraudulent reimbursement claims, it provides thousands of examples, each containing Benefica's claim number, the date received, CPT code, and purported date of service. To the extent any allegations are unclear due to a lack of specificity, they are more appropriately clarified by discovery.

---

[9] For example – and as in the present case – in both the Benefica case and the Alternative Medical Center of Florida case, GEICO alleged that the defendant healthcare clinics and their associates submitted fraudulent billing for physical therapy services that unlawfully were performed by unsupervised massage therapists, falsely represented in the billing that a licensed physician had either personally performed or directly supervised the physical therapy services, and falsely represented that the services were medically necessary, and in some cases that the services actually had been performed. By extension, in both the Benefica case and the Alternative Medical Center of Florida case – as in the present case – GEICO alleged that the defendant healthcare clinics lacked legitimate medical directors, and therefore were operating in violation of the Clinic Act.

Id. at *5; see also Alternative Medical, supra, Docket No. 17, fn. 1 (denying motion for more definite statement based – as in the present case – on the defendants' failure to meet and confer as required by the local rules, but noting, in any case, that "had the Court assessed Alternative Medical's motion for a more definite statement on its merits it likely would have reached the same conclusion: the complaint 'provides more than adequate information for Defendants to respond' and is far from unintelligible.")

GEICO's Complaint is in all material respects identical to the complaints in Benefica and Alternative Medical. Therefore, GEICO respectfully submits that the present motion for a more definite statement should be denied for the same reasons that Judge Moreno denied the Benefica defendants' motion for a more definite statement.

Accordingly, the Moving Defendants' motion should be denied to the extent that it seeks a more definite statement.

### III.    To the Extent That the Court Finds any Defect, GEICO Requests Leave to Replead

GEICO believes that its Complaint adequately alleges its claims against the Defendants. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, GEICO respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims. When a party requests leave to amend its complaint, permission generally should be freely granted. See, e.g., Moreno v. Moore, 2019 U.S. Dist. LEXIS 190792 (M.D. Fla. 2019).

### CONCLUSION

For the reasons stated above, the Moving Defendants' motion to dismiss and alternative motion for a more definite statement should be denied in its entirety.

Respectfully submitted,

*/s/ Timothy J. Bang*  
Timothy J. Bang (admitted pro hac vice)  
RIVKIN RADLER LLP  
926 RXR Plaza  
Uniondale, New YORK 11556  
Phone (516) 357-3000  
Timothy.bang@rivkin.com  

*/s/ John P. Marino*  
John P. Marino (FBN 678783)  
Lindsey R. Trowell (FBN 814539)  
Kristen Wenger (FBN 92136)  
SMITH, GAMBRELL & RUSSELL, LLP  
50 N. Laura Street, Suite 2600  
Jacksonville, Florida 32202  
Phone (904) 598-6100  
Facsimile (904) 598-6204

jmarino@sgrlaw.com  
ltrowell@sgrlaw.com  
kwenger@sgrlaw.com

## CERTIFICATE OF SERVICE

I certify that on June 25, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice to the counsel of record on the attached service list.

<em>/s/ John P. Marino</em>